**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**GREEN BAY DIVISION**

PTP ONECLICK, LLC,

                Plaintiff,

      v.

AVALARA, INC.,

                Defendant.

Case No. 1:18-cv-01671-WCG

**DEFENDANT AVALARA, INC.'S MEMORANDUM IN SUPPORT OF**
**MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    RELEVANT FACTS .......................................................................................... 1

    A.    PTP OneClick and Its Allegations ........................................................ 1

    B.    Avalara and the Accused Products ....................................................... 2

III.   ARGUMENT ..................................................................................................... 5

    A.    Legal Standard for Transfer of Venue Pursuant to 28 U.S.C. 1404(a) ................. 5

    B.    This Case Could Have Been Brought in the Western District of
        Washington ........................................................................................... 6

    C.    Convenience Considerations Favor Transfer to the Western District of
        Washington ........................................................................................... 6

        1.    All Material Events Relevant to this Action Occurred in
             Washington ........................................................................... 7

        2.    The Balance of Convenience of the Parties and Witnesses Favors
             Transfer to Washington ........................................................ 8

        3.    The Sources of Proof Are Centered in Washington ............... 12

        4.    Plaintiff's Arbitrary Choice of Forum Should Be Afforded No
             Weight Because Wisconsin Is Not Plaintiff's Home Forum and the
             Claims Have No Wisconsin Nexus ....................................... 14

    D.    The "Interest of Justice" Considerations Favor Transfer to Washington ........... 14

        1.    The Western District of Washington Has a Faster Average Time to
             Trial ...................................................................................... 15

        2.    The Relative Familiarity with Applicable Law Does Not Favor
             Either District ....................................................................... 16

        3.    The Respective Desirability of Resolving Controversies in Each
             Locale and the Relationship of Each Community to the
             Controversy Favor Transfer to Washington ......................... 16

IV.    CONCLUSION ................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

C ASES

*Addiction & Detoxification Inst., LLC v. Rapid Drug Detox Ctr.*,
  No. 11-CV-7992, 2013 WL 951115 (N.D. Ill. Mar. 11, 2013)..............................8

*Ambrose v. Steelcase, Inc.*,
  No. 02–2753, 2002 WL 1447871 (N.D. Ill. July 3, 2002).....................................13

*Century Consultants v. Choctaw Racing Servs., LLC.*,
  No. 05-C-0494, 2005 WL 2671248 (E.D. Wis. Oct. 18, 2005) (Griesbach, J.) .....................14

*CNH Am. LLC v. Int'l Union, United Auto., Aerospace & Agric. Implement
  Workers of Am.*,
  No. 08-C-720, 2009 WL 357920 (E.D. Wis. Feb. 12, 2009)................................5, 6

*Coffey v. Van Dorn Iron Works*,
  796 F.2d 217 (7th Cir. 1986) .................................................................................5

*Craik v. Boeing Co.*,
  37 F. Supp. 3d 954 (N.D. Ill. 2013) ..................................................................8, 15

*Dunn v. Soo Line R. Co.*,
  864 F. Supp. 64 (N.D. Ill. 1994) .........................................................................14

*In re Acer Am. Corp.*,
  626 F.3d 1252 (Fed. Cir. 2010)...............................................................................8

*In re Aftermarket Filters Antitrust Litig.*,
  No. 08-C-4883, 2009 WL 3754041 (N.D. Ill. Nov. 5, 2009) ...............................16

*In re Genentech*,
  566 F.3d 1338 (Fed. Cir. 2009)..............................................................................13

*ORD Structure Innovations, LLC v. Oracle Corp.*,
  No. 11-C-3307, 2011 WL 4435667 (N.D. Ill. Sep. 22, 2011) ................................7

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981)................................................................................................14

*Red Stag Engineering & Automation, Inc. v. Elite Manuf. Techs., Inc.*,
  No. 07-C-224, 2007 WL 1413402 (E.D. Wis. May 11, 2007) (Griesbach, J.)...................8, 15

*Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*,
  626 F.3d 973 (7th Cir. 2010) ......................................................................... passim

# TABLE OF AUTHORITIES
(cont'd.)

*Stewart Org., Inc. v. Ricoh Corp.*,
   487 U.S. 22 (1988)..........................................................................................5

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964)........................................................................................5

## STATUTES

28 U.S.C. § 1391..............................................................................................6

28 U.S.C. § 1404(a) ...................................................................................1, 5, 6

Wis. Stat. § 100.20............................................................................................16

## OTHER AUTHORITIES

Federal Court Management Statistics, *available at*
   http://www.uscourts.gov/statistics/table/na/federal-court-management-
   statistics/2018/06/30-3 (last visited Nov. 3, 2018) .......................................15

Case 1:18-cv-01671-WCG   Filed 11/07/18   Page 4 of 22   Document 6

## DEFENDANT AVALARA, INC.'S MEMORANDUM IN SUPPORT OF
## MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)

Defendant Avalara, Inc. ("Avalara") submits this Memorandum in support of its Motion to Transfer Venue and respectfully requests that the Court transfer this action to the Western District of Washington pursuant to 28 U.S.C. § 1404(a).

## I. INTRODUCTION

This case has no connection to Wisconsin. Neither party is based in Wisconsin. None of the witnesses resides in Wisconsin, and none of the evidence is located in Wisconsin.

In contrast, the alleged events and occurrences underlying Plaintiff's trade secret misappropriation and breach of contract claims all occurred in Washington. The products that Plaintiff alleges infringe his patent were designed, conceived, developed, and tested in Washington. And key party and non-party witnesses—including eyewitnesses to the events described in Plaintiff's Complaint and technical witnesses involved in the design and development of the accused functionalities—live and work in Washington.

Under these circumstances, Courts routinely transfer actions to the forum that has the relevant evidence and source of proof. Here, that forum is the Western District of Washington.

## II. RELEVANT FACTS

### A. PTP OneClick and Its Allegations

Plaintiff PTP OneClick LLC ("PTP") alleges that it is a Delaware limited liability company with its principal place of business in Buffalo Grove, Illinois. ECF No. 1 ("Compl.") ¶ 2. Although it alleges that its members are located in five states including Wisconsin, *id.* ¶ 5, PTP does not allege in its Complaint that it has any operations in or material connections to Wisconsin. PTP's founder, Pavlos T. Pavlou, is a certified public accountant licensed in Illinois. *Id.* ¶ 8.

On October 22, 2018, PTP filed this action against Avalara in the Eastern District of Wisconsin alleging claims for patent infringement, trade secret misappropriation, unfair competition, and breach of contract.

Plaintiff alleges that Avalara infringes U.S. Patent No. 9,760,915 by making, using, offering to sell, and selling Avalara's AvaTax, Avalara Returns, and Avalara TrustFile products. Compl. ¶¶ 56–58. According to the information available on the face of the asserted patent, each of the named inventors appears to reside in Illinois. *See* Compl. Ex. 3.

PTP alleges that it signed a confidentiality agreement with Avalara on August 1, 2011. Compl. ¶ 17, Ex. 2. The Confidentiality Agreement is countersigned by Marshal Kushniruk on behalf of Avalara; addressed to PTP OneClick, care of venture capital firm Seven Hills Partners LLC in San Francisco, California; and by its terms is governed by California law. *Id*. Ex. 2.

PTP alleges that it disclosed certain trade secrets and confidential information to Avalara at and after a meeting between Mr. Pavlou and Avalara executives at Avalara's Washington headquarters on August 2, 2011. Compl. ¶¶ 16–25. PTP further alleges that Avalara misappropriated that information in breach of the agreement to develop Avalara's AvaTax, Avalara Returns, and Avalara TrustFile products. *See id*. ¶¶ 34–36.

## B. Avalara and the Accused Products

Avalara offers cloud-based solutions for tax compliance and automation. Declaration of Marshal Kushniruk ("Kushniruk Decl.") ¶ 2; Compl. ¶ 3. Avalara is a Washington corporation with its headquarters and principal place of business in Seattle, Washington. Kushniruk Decl. ¶ 4; Compl. ¶ 3. Avalara employs 464 employees in the Western District of Washington, nearly all of whom work Avalara's Seattle headquarters. Kushniruk Decl. ¶ 4. Virtually all of these employees work directly, or at least indirectly, on the accused AvaTax, Avalara Returns, and/or Avalara TrustFile products. *Id*.

- 2 -

Avalara has offices throughout the United States, but its strategic center is at its Seattle headquarters. Compl. ¶ 3; Kushniruk Decl. ¶ 4. The majority of the Avalara employees who designed, developed, managed, and commercialized the accused AvaTax, Avalara Returns, and Avalara TrustFile products work at Avalara's Seattle headquarters. Kushniruk Decl. ¶ 10. Specifically, Avalara has identified the following six employees who would likely testify as witnesses in this case regarding the design, development, functionality, marketing, and sales of the accused products: **Mark Wilhelm**, Director of Partner Launch; **Mark Withers**, Senior Software Developer, formerly Director of Software Development; **Tracy Barney**, Director of Quality Assurance; **Rae Winn**, Senior Quality Assurance Engineer; **Andrea Anderson**, Senior Vice President of Customer Loyalty, formerly Director of Marketing; and **Mark Giddens**, Manager of Pre-Sales Support. *Id.* at ¶¶ 11–13. Each of these Avalara employees works in Avalara's Seattle headquarters and resides in the Seattle area. *Id.*

Plaintiff's Complaint alleges that Mr. Pavlou met with four Avalara executives at Avalara's Washington headquarters on August 2, 2011: **Rory Rawlings**, **Marshal Kushniruk**, **Dave Weber**, and Brooke Walker. Compl. ¶¶ 18, 21. Mr. Kushniruk is Avalara's Executive Vice President for Global Product and Business Development, works in Avalara's Seattle headquarters, and resides in the Seattle area. Kushniruk Decl. ¶ 1. Mr. Rawlings and Mr. Weber are no longer employees of Avalara, but both currently reside in the Seattle area. *Id.* ¶ 6. Avalara has no record of a co-founder or employee by the name of Brooke Walker. *Id.* ¶ 8.

Avalara has identified three other former Avalara employees who likely attended the August 2011 meeting with Plaintiff and who may have discoverable information with respect to the related allegations in Plaintiff's Complaint: **Lloyd Geggatt**, **Luis Saenz**, and **Robert (Tres)**

- 3 -

**Heffron**. *Id.* ¶ 9. Mr. Heffron currently resides in the Seattle area. *Id.* Mr. Geggatt lives in Kilauea, Hawaii, and Mr. Saenz lives in San Diego, California. *Id.*

Avalara's documents related to the design, development, operation, maintenance, marketing, and financial performance of the accused AvaTax, Avalara Returns, and Avalara TrustFile products are most easily accessible in Seattle. *Id.* ¶ 14. For example, Avalara's network drive for the storage of Avalara product- and business-related data is located in Seattle. Since 2004, Avalara has also maintained a SharePoint Server installed locally within Avalara's IT infrastructure in Seattle, which its product developers use for collaboration, document management, and data storage. *Id.* Avalara also has source code repositories containing past and present code for the accused products. *Id.* Those source code repositories are located in and controlled from Seattle. *Id.* Avalara has also located hard-copy materials in Seattle relevant to Avalara's finances and financial history for a portion of the time period for which Plaintiff alleges he is entitled to damages. *Id.* ¶ 15. And because Avalara's headquarters is in Seattle, it is likely that all relevant paper records will be located there. *Id.* ¶ 4.

Avalara opened its Green Bay office in 2014 following Avalara's acquisition of the Zytax line of energy excise tax-related products from FuelQuest, Houston-based company. *Id.* ¶ 16. That company's employees then joined Avalara as part of that acquisition and continue to work on the Zytax Determination product. *Id.* The Wisconsin employees were not part of Avalara in 2011 when Plaintiff allegedly met with Avalara. *Id.* They were not part of Avalara in the ensuing several years when Plaintiff alleges Avalara incorporated alleged PTP trade secrets into its products. *Id.* Today, the Wisconsin employees continue to focus on the product they brought to Avalara—a separate energy excise tax product—not on any of the legacy products Plaintiff identifies in its allegations. *Id.*

- 4 -

Avalara has not identified any potential witnesses or evidence relevant to any disputed issue in this case located in the Eastern District of Wisconsin. *Id.* ¶ 17.

## III. ARGUMENT

### A. Legal Standard for Transfer of Venue Pursuant to 28 U.S.C. § 1404(a)

An action may be transferred to any other district or division where it might have been brought, "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404 (West). The Supreme Court has explained that the statute was intended to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). It also "reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice." *Id*.

A transfer pursuant to § 1404(a) is appropriate if: (1) venue is proper in both the transferor and the transferee district; (2) transfer will serve the convenience of the parties and the witnesses, and (3) transfer is warranted in the interest of justice. *CNH Am. LLC v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am*., No. 08-C-720, 2009 WL 357920, at *3 (E.D. Wis. Feb. 12, 2009), *citing Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 n. 3 (7th Cir. 1986).

Decisions to transfer are at the discretion of the district court based on an "'individualized, case-by-case consideration of convenience and fairness.'" *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc*., 626 F.3d 973, 977 (7th Cir. 2010), *quoting Stewart Org., Inc. v. Ricoh Corp*., 487 U.S. 22, 29 (1988). Accordingly, the factors specifically mentioned in Section 1404(a) are best understood as "placeholders for a broader set of considerations, the contours of which turn upon the particular facts of each case." *Coffey*, 796 F.2d at 219. As part of the convenience evaluation, courts in the Seventh Circuit consider the

- 5 -

location of material events, the relative ease of access to sources of proof, the availability of and access to witnesses, and the convenience of the parties. *Research Automation*, 626 F.3d at 978. For the "interest of justice" element, courts consider docket congestion and relative speed to trial, each court's relative familiarity with the relevant law, the respective desirability of resolving controversies in each locale, and the relationship of each community to the controversy. *Id.*

## B.      This Case Could Have Been Brought in the Western District of Washington

The threshold inquiry for a § 1404(a) transfer motion is whether venue is proper in both the transferee and transferor districts. *CNH Am.*, 2009 WL 357920, at *3. For purposes of this Motion, Avalara does not contest the technical propriety of venue in the Eastern District of Wisconsin, where Plaintiff chose to initiate this lawsuit. But Plaintiff could have brought this action against Avalara in the Western District of Washington, where Avalara maintains its headquarters and principal place of business. *See* 28 U.S.C. §§ 1391(b)(1), (c)(2), 1400(b) (providing that "any civil action for patent infringement may be brought in the judicial district where the defendant resides or where the defendant has committed acts of infringement and has a regular and established place of business"); Compl. ¶ 3; Kushniruk Decl. ¶ 4. Venue is also proper in the Western District of Washington because a substantial portion of the events that Plaintiff alleges give rise to its claims occurred in Seattle, Washington. *See* Compl. ¶ 16–25, 28; 28 U.S.C. § 1391(b)(2).

## C.      Convenience Considerations Favor Transfer to the Western District of Washington

The convenience factors weigh heavily in favor of transfer, particularly given that the allegations are centered on events that occurred in the Western District of Washington, the relative ease of access to witnesses and other sources of proof in that forum, and this case's lack of connection to the Eastern District of Wisconsin.

- 6 -

### 1. All Material Events Relevant to this Action Occurred in Washington

All of the operative facts underlying this action occurred in the Western District of Washington. Plaintiff alleges that at an in-person meeting with Avalara executives at Avalara's Washington headquarters, Mr. Pavlou disclosed confidential technical and operational details of his tax system, including "PTP's secret algorithms and methods" and "the underlying functionality of Pavlou SalesTaxPro." Compl. ¶ 22; *see id*. ¶¶ 14–25 (describing the alleged transactions and occurrences on and around the Seattle meeting). Plaintiff further alleges that Avalara "misappropriated PTP's trade secrets" disclosed at the 2011 meeting in Washington and "improperly incorporated them into the Avalara Products." *Id*. ¶ 35; *see id*. ¶¶ 61–81. Any alleged misuse of Plaintiff's purported trade secrets and alleged breach of the confidentiality agreement would have occurred in Washington, Avalara's headquarters and strategic center where material decisions are made regarding the AvaTax, Avalara Returns, and Avalara TrustFile products that Plaintiff alleges incorporate its confidential information and trade secrets, and where those products are designed, developed, managed, and commercialized. *See* Kushniruk Decl. ¶¶ 4, 10; *see, e.g*., Compl. ¶¶ 62 (alleging that "PTP's trade secrets are used in the design and manufacture of the Avalara Products"), 79 (alleging that "Avalara has breached that Confidentiality Agreement by using PTP's confidential information for improper and unauthorized purposes, such as the development and sale of the Avalara Products").

Likewise, any conduct of "making using, offering to sell, and selling" the products accused of patent infringement would also have been centered at Avalara's Washington headquarters. *See* Kushniruk Decl. ¶ 10; Compl. ¶¶ 56–59. "In a patent case, the situs of material events is the place where the alleged infringer develops, manufactures, and sells the accused product because that is the place that gives rise to its potential liability." *ORD Structure Innovations, LLC v. Oracle Corp.*, No. 11-C-3307, 2011 WL 4435667, at *2 (N.D. Ill. Sep. 22,

- 7 -

2011) (transferring case to Northern District of California where the infringing products were primarily developed, and where relevant documentation related to sales and marketing were located). The Federal Circuit also considers the location that the allegedly infringing products were developed and commercialized when weighing the situs of material events in patent infringement cases. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (transferring case to Northern District of California because research and development of the infringing products and "[a]ll decisions regarding marketing, sales, and pricing" occurred there). Courts in the Seventh Circuit have also found that that the location of material events factor weighed in favor of transfer where the allegedly infringing products were primarily developed in the transferee district. *See, e.g.*, *Craik v. Boeing Co.,* 37 F. Supp. 3d 954, 961 (N.D. Ill. 2013) (transferring case to Western District of Washington where the allegedly infringing product was primarily developed and tested in Seattle, but not in the transferor district); *Addiction & Detoxification Inst., LLC v. Rapid Drug Detox Ctr.*, No. 11-C-7992, 2013 WL 951115, at *2–3 (N.D. Ill. Mar. 11, 2013).

The August 2011 meeting at which Plaintiff allegedly disclosed trade secrets and confidential information occurred at Avalara's headquarters in Washington. And because Washington is also the primary location where Avalara designed, developed, tested, and commercialized the accused products, this factor weighs strongly in favor of transfer.

## 2. The Balance of Convenience of the Parties and Witnesses Favors Transfer to Washington

Convenience of the witnesses and parties, per the Seventh Circuit, involves consideration of "availability of and access to witnesses, and each party's access to and distance from resources in each forum." *Research Automation*, 626 F.3d 973 at 978. Where the large majority of witnesses reside much closer to the transferee forum than the transferor forum, this Court has

- 8 -

concluded that the transferee forum is more convenient, and transfer is warranted. *See, e.g.*, *Red Stag Eng'g & Automation, Inc. v. Elite Mfg. Techs., Inc.*, No. 07-C-224, 2007 WL 1413402, at *3 (E.D. Wis. May 11, 2007) (Griesbach, J.).

Avalara has identified ten potential witnesses who are located in the Western District of Washington. Kushniruk Decl. ¶¶ 6–7, 9, 11–13.

Four of these witnesses were materially involved in the transactions and occurrences on or around the August 2011 meeting at which Plaintiff alleges Mr. Pavlou disclosed trade secrets and confidential information to Avalara. This includes the three Avalara executives Plaintiff specifically named in the complaint as having attended the meeting in person:[1] Marshal Kushniruk, Rory Rawlings, and Dave Weber. Compl. ¶¶ 18; Kushniruk Decl. ¶ 6. These witnesses are expected to be able to provide eyewitness testimony about what occurred at and around the meeting and could corroborate or contradict Plaintiff's allegations. Mr. Kushniruk is Avalara's Executive Vice President for Global Product and Business Development. Kushniruk Decl. ¶ 1. Although Mr. Kushniruk does not recall attending the meeting, he is signatory to the Confidentiality Agreement that Plaintiff alleges Avalara breached, and would likely testify regarding the circumstances surrounding the signing of that agreement. *Id*. at ¶¶ 6–7. Mr. Rawlings and Mr. Weber are non-party witnesses; they are no longer employed by Avalara, but they continue to reside in the Seattle area. Kushniruk ¶ 6. In addition to the three individuals Plaintiff named, Avalara has also identified another witness, Robert (Tres) Heffron, a former

---

[1] Plaintiff also named one additional individual who allegedly attended the August 2011 meeting, Brooke Walker, who Plaintiff alleges is an Avalara "co-founder." Compl. ¶ 21. Avalara has no record of any co-founder or employee by that name having worked for Avalara. Kushniruk Decl. ¶ 8.

Avalara business analyst who also likely attended the August 2011 meeting and who currently resides in the Seattle area. *Id*. ¶ 9.

The other six Avalara witnesses are Avalara employees who played key roles in the design, development, testing, and commercialization of the Avalara AvaTax, Avalara Returns, and Avalara TrustFile products that Plaintiff alleges infringe the '915 patent and incorporate its trade secrets and confidential information. Mark Wilhelm is the Director of Partner Launch at Avalara, and Mark Withers is a Senior Software Developer at Avalara and formerly its Director of Software Development. *Id*. ¶ 11. Both Mr. Wilhelm and Mr. Withers have worked on the accused products since 2005 and are knowledgeable about the design process for the accused products, the relevant prior art in field at the time of development, how the products were developed and how they evolved, the past and present operation and functionality of the accused products, and technical details about the accused features of these products. *Id*. Tracy Barney is Director of Quality Assurance at Avalara and Rae Winn is a Senior Quality Assurance Engineer. *Id*. ¶ 12. Ms. Barney and Ms. Winn have both worked in product testing for the accused products and are well versed in their past and present operation and functionality, and technical details about the accused features of these products. *Id*. Andrea Anderson is Senior Vice President of Customer Loyalty at Avalara and formerly its Director of Marketing, and Mark Giddens is a Manager of Pre-Sales Support at Avalara. *Id*. ¶ 13. Ms. Anderson and Mr. Giddens are both familiar with the accused products from a marketing and sales perspective and are knowledgeable about how the products were promoted and sold to customers. *Id*. They also have general knowledge about how the accused products were developed and how they evolved, and the past and present operation and functionality of the accused products. *Id*. All six of these employees work in Avalara's Seattle headquarters and reside in the Seattle area. *Id*. at ¶¶ 11–13.

- 10 -

Avalara has also identified two additional potential witnesses who are former Avalara employees and who likely attended the August 2011 meeting: Lloyd Geggatt and Luis Saenz. Mr. Geggatt lives in Kilauea, Hawaii, and Mr. Saenz lives in San Diego, California. *Id*. ¶ 9. Additionally, W.S. Wisialowski and venture capital firm Seven Hills Partners LLC, who appear to have represented PTP OneClick and are named in the Confidentiality Agreement, are based in San Francisco, California. *See* Compl. Ex. 2. While these individuals appear to be outside the reach of compulsory process for both district courts, travel to the Western District of Washington would be more convenient and less expensive for these witnesses than traveling to Green Bay, Wisconsin for trial.

No potential material Avalara witness resides in or near the Eastern District of Wisconsin, and therefore none is subject to subpoena in this District.

Avalara is unaware of any potential PTP witness who resides in the Eastern District of Wisconsin. Mr. Pavlou and the other named inventor of the asserted patent, Nicholas M. Mavros, appear to live in Long Grove, Illinois, and Mt. Prospect, Illinois, respectively. *See* Compl. Ex. 3. Mr. Mavros appears to be outside the reach of compulsory process for both district courts.

Concerning the convenience of the parties, Avalara is headquartered in Seattle, Washington, where the large majority of its employees responsible for the accused AvaTax, Avalara Returns, and Avalara TrustFile products work. Kushniruk Decl. ¶ 10. PTP has its principal place of business in Buffalo Grove, Illinois. Compl. ¶ 2. Neither of the parties has any significant or relevant connection to the Eastern District of Wisconsin. Although Avalara has an office in Green Bay, the employees at that facility joined Avalara as part of Avalara's acquisition of acquisition of the Zytax line of energy excise tax-related products from FuelQuest, a Houston-based company. Kushniruk Decl. ¶ 16. The Wisconsin employees were not part of Avalara in

2011 when Plaintiff allegedly met with Avalara. *Id.* They were not part of Avalara in the ensuing several years when Plaintiff alleges Avalara incorporated PTP trade secrets into its products. *Id.* And even now, the Wisconsin employees continue to focus on the product they brought to Avalara—a separate energy excise tax product—not on any of the legacy products Plaintiff identifies in its allegations. *Id.* The numerous Avalara party and non-party witnesses identified above, including high-level managers and executives, would need to travel approximately 2,000 miles by plane and arrange overnight accommodations for trial, causing substantial disruption to Avalara's business that would be minimized if this case were transferred to the Western District of Washington. And while the Eastern District of Wisconsin is arguably more convenient for Plaintiff, even so, Mr. Pavlou resides well over 150 miles from the Court and would likely also require travel arrangements and overnight accommodations for trial. With nearly all of the witnesses located in the Western District of Washington and none of the parties or witnesses located in the Eastern District of Wisconsin, the balance of this convenience factor weighs strongly in favor of transfer.

### 3. The Sources of Proof Are Centered in Washington

As described above, there are at least three material non-party witnesses within the subpoena power of the Western District of Washington—Rory Rawlings, Dave Weber, and Tres Heffron—but there are no known potential witnesses who can be compelled to appear in the Eastern District of Wisconsin. This is significant because Plaintiff alleges that four Avalara executives attended the August 2011 meeting at which Plaintiff allegedly disclosed trade secrets and confidential information: Marshal Kushniruk, Rory Rawlings, Dave Weber, and Brooke Walker. Mr. Kushniruk is currently employed by Avalara but does not recall attending that meeting. Kushniruk Decl. ¶ 6. Avalara has no record of a co-founder or employee named Brooke Walker. *Id.* ¶ 8. Mr. Rawlings and Mr. Weber, therefore, are the only two eyewitnesses that

- 12 -

Avalara has been able to identify who have direct knowledge of the August 2011 meeting, and their testimony may be crucial to rebutting Plaintiff's allegations about what occurred at the meeting. Both individuals, however, are non-parties who may need to be compelled to testify at trial. Because they both live in the Seattle area, they are within the subpoena power of the Western District of Washington, but outside that of the Eastern District of Wisconsin.

The Federal Circuit has observed that "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *In re Genentech,* 566 F.3d 1338, 1345 (Fed. Cir. 2009). To establish liability in a patent infringement case, plaintiffs generally need to "discover primarily the design, development and engineering of the accused device." *Ambrose v. Steelcase, Inc.*, No. 02-2753, 2002 WL 1447871, at *3 (N.D. Ill. July 3, 2002). So, too, here, where the key witnesses and evidence related to the design, development, operation, maintenance, commercialization, and financial performance of the Avalara products accused of patent infringement, as well as of improperly incorporating Plaintiff's trade secrets and confidential information, are located at Avalara's headquarters in Seattle. The relevant documents are stored in Avalara's network drive for the storage of Avalara product- and business-related data; Avalara's SharePoint Server installed locally within Avalara's IT infrastructure, which its product developers use for collaboration, document management, and data storage; and in its source code repositories containing past and present code for the accused products. Kushniruk Decl. ¶ 14. These sources of relevant documents and code located in and controlled from Seattle and are therefore more readily accessible in the Western District of Washington than in the Eastern District of Wisconsin. *See id.*

Because the sources of relevant proof are centered in Washington, this factor weighs strongly in favor of transfer.

- 13 -

4.     **Plaintiff's Arbitrary Choice of Forum Should Be Afforded No Weight Because Wisconsin Is Not Plaintiff's Home Forum and the Claims Have No Wisconsin Nexus**

Deference to a plaintiff's choice of forum is unwarranted when the plaintiff's chosen forum is not the plaintiff's home forum or has a relatively weak connection with the operative facts at issue in the litigation. *Century Consultants v. Choctaw Racing Servs., LLC.*, No. 05-C-0494, 2005 WL 2671248, at *2 (E.D. Wis. Oct. 18, 2005) (Griesbach, J.) ("When the plaintiff has chosen a forum other than its own home, the assumption that the forum chosen by the plaintiff is more convenient is 'much less reasonable.'" (*quoting Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981))); *Dunn v. Soo Line R. Co.*, 864 F. Supp. 64, 65 (N.D. Ill. 1994) (if "the conduct and events giving rise to the cause of action do not take place in the plaintiff's selected forum, the plaintiff's preference has minimal value").

The Court should afford no weight to Plaintiff's choice of this forum. PTP does not reside in or have any material connection to this District. It is a Delaware limited liability company with its principal place of business in Illinois. Compl. ¶ 2. The Eastern District of Wisconsin is not its home. Nor does Plaintiff allege that the events that undergird its causes of action have a nexus with this District; instead, the alleged trade secret disclosure occurred in Washington, and the alleged patent infringement and trade secret misappropriation occurred in Washington, where the accused products were designed, developed, and commercialized. Indeed, Plaintiff does not allege that any relevant events occurred in Wisconsin. Thus, Plaintiff's choice of the Eastern District of Wisconsin as the forum should be given no weight.

D.     **The "Interest of Justice" Considerations Favor Transfer to Washington**

The question of whether a transfer of venue is in the interest of justice focuses on "the efficient administration of the court system." *Research Automation*, 626 F.3d at 978. The public "interests of justice" considerations include "docket congestion and likely speed to trial in the

- 14 -

transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy." *Id*. (internal citations omitted). These "interest of justice" factors also weigh in favor of transfer.

### 1. The Western District of Washington Has a Faster Average Time to Trial

The first public interest factor, speediness to trial, favors transfer. The prospect of a speedy trial is measured by the "median length of time from filing to disposition on the merits or the median time from filing to trial." *Craik v. Boeing Co*., 37 F. Supp. 3d 954, 963 (N.D. Ill. 2013). According to the most recent federal court management statistics, the Western District of Washington has a shorter filing-to-trial period than the Eastern District of Wisconsin:

| District | Filing-to-Trial |
|---|---|
| Eastern District of Wisconsin | 35.6 Months |
| Western District of Washington | 19.5 Months |

The median time from the filing of a case to trial in the Eastern District of Wisconsin from June 2017 to June 2018 was approximately three years. *See* Federal Court Management Statistics, Eastern Wisconsin, *available at* http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2018/06/30-3 (last visited Nov. 3, 2018). By contrast, the median time for resolution in the Western District of Washington over the same time period was roughly half that—19.5 months. *See id*. at Western Washington. Further, this case was very recently filed and the Court has not yet invested judicial resources in resolving the substantive disputes. Under similar circumstances where the statistical information regarding time to trial suggests that "transfer would also serve the interest of the parties in having a prompt resolution of the matter," this Court has granted the movant's request to transfer. *See, e.g., Red Stag Eng'g & Automation, Inc.*, 2007 WL 1413402, at *4.

- 15 -

### 2. The Relative Familiarity with Applicable Law Does Not Favor Either District

While the Western District of Washington generally adjudicates more patent and trade secret cases than this District, both courts are equally capable of applying federal law to the federal patent infringement and trade secret misappropriation claims. Plaintiff's state law claim for breach of contract is governed by California law, which both forums are also equally capable of applying. *See* Compl. Ex. 2 ¶ 9. Although Plaintiff alleges a trade secret cause of action under Wisconsin state law, PTP has no discernable connection to the state of Wisconsin, and both Washington and Wisconsin have adopted the Uniform Trade Secrets Act, which would govern Plaintiff's state-law trade secrets cause of action to the extent it differs from the federal Defend Trade Secrets Act.[2] Finally, as explained in Avalara's concurrently filed motion to dismiss, Wisconsin state law does not provide a private right of action for unfair competition, and Avalara anticipates that Plaintiff's claim for unfair competition claim will accordingly be dismissed. *See* Avalara's Motion to Dismiss at Section IV.E.; Wis. Stat. § 100.20; *In re Aftermarket Filters Antitrust Litig.*, No. 08-C-4883, 2009 WL 3754041, at *10 (N.D. Ill. Nov. 5, 2009) ("There is no private right of action under the Wisconsin Trade Practice Statute, Wis. Stat. § 100.20, except to remedy a violation of an order issued by the Wisconsin Department of Agriculture, Trade and Consumer Protection.").

### 3. The Respective Desirability of Resolving Controversies in Each Locale and the Relationship of Each Community to the Controversy Favor Transfer to Washington

Two other factors—the desirability of resolving controversies in their locale and the relation of the issues to the community—strongly weigh in favor of transferring this action to the

---

[2] Avalara has also moved to dismiss Plaintiff's cause of action under the Wisconsin Uniform Trade Secrets Act because it is time-barred and impermissibly extends the extraterritorial reach of the Wisconsin UTSA beyond what is permitted under the law. *See* Avalara's Motion to Dismiss at Sections IV.C.–IV.D.

- 16 -

Western District of Washington. The core issues in dispute are whether the accused Avalara products, which were developed and commercialized Washington, incorporated misappropriated trade secrets and confidential information or infringed Plaintiff's patent. As such, the Western District of Washington, where Avalara and its employees, documents, and source code are located, has a far greater connection to the operative facts of this case than Wisconsin, where none of the parties or evidence is located.

## IV. CONCLUSION

Litigating this case in the Western District of Washington will be clearly more convenient than in this District. None of the relevant witnesses or evidence are located in this District, and Avalara is not aware of any other material connection between this action and the District. In contrast, the material events underlying this dispute, a substantial number of party and non-party witnesses, and the corpus of the evidence and sources of proof are located in the Western District of Washington. The interests of justice are also served by transfer because the parties would see a faster time to trial, and Washington has a greater interest in resolving this dispute. Avalara accordingly requests that the Court transfer this action to the Western District of Washington.

- 17 -

DATED:  November 6, 2018                          s/ *Brandon M. Lewis*

Brandon M. Lewis, WI Bar No 1086824
BLewis@perkinscoie.com
Perkins Coie LLP
One East Main Street, Suite 201
Madison, WI  53703-5118
Telephone:  608.663.7468
Facsimile:  608.663.7499

Ryan J. McBrayer (Admission to be filed)
RMcBrayer@perkinscoie.com
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Telephone:  206.359.8000
Facsimile:  206.359.9000

Daniel T. Keese (Admission to be filed)
DKeese@perkinscoie.com
Perkins Coie LLP
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

*Attorneys for Defendant*
Avalara, Inc.

141887504.7

- 18 -