**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**GREEN BAY DIVISION**

| | |
|---|---|
| PTP ONECLICK, LLC, | |
|        Plaintiff, | |
|     v. | No. 1:18-CV-01671-WCG |
| AVALARA, INC., | |
|        Defendant. | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**
**UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

# TABLE OF CONTENTS

**Page**

I.    **INTRODUCTION** ................................................................................ 1

II.   **STATEMENT OF FACTS** .............................................................. 1

III.  **LEGAL STANDARDS APPLICABLE TO MOTIONS TO DISMISS** ...................... 3

IV.  **THE FACTS AND LAW COMPEL DISMISSAL OF ALL COUNTS** ..................... 5

    A.    **The '915 Patent Is Invalid Under 35 U.S.C. § 101.** .......................... 5

        1.    **The Court Applies a Two-Step Analysis When Ruling on Motions to Dismiss Under 35 U.S.C. § 101.** ...................... 6

        2.    **The Claims of the '915 Patent Fail the *Alice* Two-Part Test.** .............. 8

            a.    ***The Claims Are All Directed to Calculating and Filing Business Taxes.*** .................................................. 8

            b.    ***Step 1: Calculating and Filing Business Taxes is an Abstract Concept.*** ...................................... 10

            c.    ***Step 2: The Claims Require Only Generic Computers and Networks.*** ...................................... 11

        3.    **The Dependent Claims Do Nothing to Salvage Patentability.** ........... 13

        4.    **Claim 12 and Its Dependent Claims Are Equally Unpatentable.** ....... 14

        5.    **The Patent Office Did Not Fully Analyze These Section 101 Issues.** ............................................................... 14

        6.    **Dismissal *Now*—at the Rule 12 Stage—Is Warranted.** ...................... 16

    B.    **PTP Failed to Plead the Material Elements of Contributory Infringement.** ................................................................. 18

    C.    **Counts II and III (Trade Secret Misappropriation) Should Be Dismissed Because They Are Time-Barred.** .................................. 19

        1.    **The Relevant Three-Year Statutes of Limitation Are Properly Enforced via Dismissal.** .................................. 19

        2.    **PTP Pleads No Facts Even Suggesting that the Alleged Trade Secret Misappropriation Occurred, Much Less Began, After October 22, 2015.** ......................................... 20

        3.    **Any Claim for Misappropriation Based on Actions Within the Statute of Limitations Period Also Fails to State a Claim.** ................. 21

    D.    **Count III (Misappropriation Under the WUTSA) Must Additionally Be Dismissed Because the Allegations Are Beyond the Limited Extraterritorial Reach Of The WUTSA.** ...................... 22

        1.    **The Wisconsin Trade Secret Act Has Limited Extraterritorial Reach.** ............................................................... 22

        2.    **PTP's Claims Require Forbidden Extraterritorial Application of the WUTSA.** ................................................. 23

    E.    **Count IV (Wisconsin Unfair Competition) Should Be Dismissed Because the Wisconsin Statute Does Not Provide a Private Cause of Action.** ............................................................... 25

     **F.**      **Count V (Breach of Contract) Is Also Time-Barred** ...................................... 26

           **1.**     **California's Four-Year Statute of Limitations Applies to Count V.** ...................................................................................................... 26

           **2.**     **PTP Pleads No Facts Showing that the Supposed Breach of Contract Occurred, Much Less Began, After October 22, 2014.** ...... 28

           **3.**     **Any Alleged Use of PTP's Information Is Either Barred by the Statute of Limitations or Does Not Breach of the Letter Agreement.** ........................................................................................... 28

**V.**     **CONCLUSION** ......................................................................................... 29

# TABLE OF AUTHORITIES

CASES

*Abraham v. General Casualty Co.*,
  217 Wis. 2d 294, 576 N.W.2d 46 (1998)...............................................................27

*Affinity Labs of Texas, LLC v. Amazon.Com, Inc.*,
  No. 6:15-cv-0029, 2015 WL 3757497 (W.D. Tex. June 12, 2015)...........................7

*Alice Corp. Party Ltd. v. CLS Bank Int'l*,
  573 U.S. 208, 134 S. Ct. 2347 (2014)............................................................ passim

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
  841 F.3d 1288 (Fed. Cir. 2016), *cert. denied*, 138 S. Ct. 469, 199 L. Ed. 2d
  356 (2017)................................................................................................................8

*Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. Inc.*,
  No. C 07-05248 JW, 2008 WL 11398913 (N.D. Cal. Feb. 29, 2008) ...............22, 25

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................3

*Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*,
  459 U.S. 519 (1993)................................................................................................4

*Avery v. State Farm Mut. Auto. Ins. Co.*,
  216 Ill. 2d 100, 296 Ill. Dec. 448, 835 N.E.2d 801 (2005)...................................23

*Bancorp Servs., L.L.C. v. Sun life Assurance Co. of Can. (U.S.)*,
  687 F.3d 1266 (Fed. Cir. 2012) .............................................................................17

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016)...............................................................................8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................3

*Bilski v. Kappos*,
  561 U.S. 593, 130 S. Ct. 3218 (2010)...................................................................11

*Biogen Idec., Inc. v. GlaxoSmithKline LLC*,
  713 F.3d 1090 (Fed. Cir. 2013)...............................................................................4

*Bogie v. Rosenberg*,
  705 F.3d 603 (7th Cir. 2013) .................................................................................17

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018).......................................................7, 11, 12, 13, 14

*Butcher v. United Elec. Coal Co.*,
    174 F.2d 1003 (7th Cir. 1949) ........................................................................19

*Century Hardware Corp. v. Powernail Co.*,
    282 F. Supp. 223 (E.D. Wis. 1968)..............................................................19

*Cochran v. Cochran*,
    56 Cal. App. 4th 1115, 66 Cal. Rptr. 2d 337 (1997)................................28

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014)............................................................5, 10, 14

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011)..........................................................................6, 7

*Data Engine Techs. LLC v. Google LLC*,
    -- F.3d --, 2018 WL 4868029 (Fed. Cir. Oct. 9, 2018) ..........................16

*Dean Foods Co. v. Brancel*,
    187 F.3d 609 (7th Cir. 1999) ......................................................................22, 24

*ECT International, Inc. v. Zwerlein*,
    228 Wis. 2d 343, 597 N.W.2d 479 (Ct. App. 1999) ..........................21, 29

*Emergency One, Inc. v. Waterous Co.*,
    23 F. Supp. 2d 959 (E.D. Wis. 1998)..............................................22, 24, 25, 26

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016)..........................................................................6, 17

*Genetic Techs. Ltd. v. Merial L.L.C.*,
    818 F.3d 1369 (Fed. Cir. 2016) ........................................................................17

*In re Aftermarket Filters Antitrust Litig.*,
    No. 08 C 4883, 2009 WL 3754041 (N.D. Ill. Nov. 5, 2009)....................26

*In re Bill of Lading*,
    681 F.3d 1323 (Fed. Cir. 2012)..........................................................................18

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016)......................................................................5, 8, 13

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
    711 F. App'x 1012 (Fed. Cir. 2017) ..............................................................13

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016)..................................................................5, 6, 7

*Intellicheck Mobilisa, Inc. v. Wizz Sys., LLC,*
    No. 6:15-cv-1168-JRG, 2016 WL 258524 (W.D. Wash. Jan. 20, 2016) ...............................18

*K-S Pharmacies, Inc. v. Am. Home Prod. Corp.,*
    962 F.2d 728 (7th Cir. 1992) .........................................................................23

*Kincheloe v. Farmer,*
    214 F.2d 604 (7th. Cir. 1954) .......................................................................19

*Markman v. Westview Instruments, Inc.,*
    52 F.3d 967 (Fed. Cir. 1995)...........................................................................4

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
    566 U.S. 66, 132 S. Ct. 1289 (2012).................................................................6

*MCA Records, Inc. v. Allison,*
    No. B199801, 2009 WL 1565037 (Cal. Ct. App. June 5, 2009) ...........................28

*OpenTV, Inc. v. Apple, Inc.,*
    No. 14-cv-01622, 2015 WL 1535328 (N.D. Cal. April 6, 2015)............................7

*Paynter v. Proassurance Wisconsin Ins. Co.,*
    911 N.W.2d 374 (Wis. Ct. App. 2018) ............................................................27

*Pugh v. Tribune Co.,*
    521 F.3d 686 (7th Cir. 2008) .........................................................................17

*Rosenblum v. Travelbyus.com Ltd.,*
    299 F.3d 657 (7th. Cir. 2002) .........................................................................4

*Sanchez  v. Compania Mexicana De Aviacion S.A.,*
    No. 08-55553, 2010 WL 55518 (9th Cir. Jan. 5, 2010) ......................................28

*SAP Am., Inc. v. InvestPic, LLC,*
    898 F.3d 1161 (Fed. Cir. 2018)................................................................8, 12, 16

*Smart Sys. Innovations, LLC v. Chicago Transit Auth.,*
    873 F.3d 1364 (Fed. Cir. 2017).....................................................................14

*Snap-On Inc. v. Hunter Eng'g,*
    29 F. Supp. 2d 965 (E.D. Wis. 1998)................................................................4

*State v. Pierce,*
    191 Wis. 1, 209 N.W. 693 (1926)...................................................................23

*Thomas & Betts Corp. v. Panduit Corp.,*
    65 F.3d 654 (7th Cir.1995) .............................................................................4

*Tin Tin Corp. v. Pac. Rim Park, LLC*,
 88 Cal. Rptr. 3d 816, 170 Cal. App. 4th 1220 (Ct. App. 2009) ............................................28

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
 874 F.3d 1329 (Fed. Cir. 2017), *cert. denied*, No. 18-124, 2018 WL 3626097
 (U.S. Oct. 15, 2018) ............................................................................................................7

*Ultramercial, Inc. v. Hulu, LLC*,
 772 F.3d 709 (Fed. Cir. 2014), *cert. denied sub nom.*, *Ultramercial, LLC v.*
 *WildTangent, Inc.*, 135 S. Ct. 2907 (2015) ......................................................................7

*Uniloc USA, Inc. v. Avaya Inc.*,
 No. 6:15-cv-1168-JRG, 2016 WL 7042236 (E.D. Tex. May 13, 2016) ................................18

*Vitronics Corp. v. Conceptronic, Inc.*,
 90 F.3d 1576 (Fed. Cir. 1995) ..............................................................................................4

*Voter Verified, Inc. v. Election Sys. & Software LLC*,
 887 F.3d 1376 (Fed. Cir. 2018) .........................................................................6, 11, 12, 17

*Westmoreland Advanced Materials, Inc. v. Allied Mineral Prods., Inc.*,
 Nos. 16-cv-0263, 16-cv-604, 2016 WL 3227447 (W.D. Penn. June 13, 2016) .....................18

*Wigod v. Wells Fargo Bank, N.A.*,
 673 F.3d 547 (7th. Cir. 2012) ..............................................................................................4

*Windy City Innovations, LLC v. Microsoft Corp.*,
 193 F. Supp. 3d 1109 (N.D. Cal. 2016) ................................................................................18

**STATUTES**

18 U.S.C. § 1836(d) ..................................................................................................................19

18 U.S.C. § 1837 .......................................................................................................................23

35 U.S.C. § 101 ............................................................................................................... passim

35 U.S.C. § 271(c) ....................................................................................................................18

Wis. Stat. §100.20 .............................................................................................................25, 26

Wis. Stat. § 893.07 ...............................................................................................................20, 27

Wis. Stat. § 893.43 ...................................................................................................................26

Wisconsin Trade Secret Act (Wis. Stat. §134.90) ............................................................... passim

Wis. Stat. § 893.51 ...................................................................................................................20

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 9(f) ..................................................................19

Federal Rule of Civil Procedure 10(c) .................................................................4

Federal Rule of Civil Procedure 12(b)(6) ...................................................... passim

Cal. Civ. Proc. Code § 337 ................................................................................27

# I.  INTRODUCTION

PTP's Complaint pleads five counts that are based on an invalid patent, a statute that provides no cause of action, and time-barred claims for trade secret misappropriation and breach of contract.  None of PTP's claims survive scrutiny at the pleading stage, even taking all allegations as true and in the light most favorable to PTP.

The patent count is fatally defective because the '915 Patent at issue claims an abstract concept that is not patentable.  The Supreme Court and Federal Circuit have both held that patents directed to longstanding methods of human and commercial activity, especially when implemented only with a generic "computer" or "network," are unpatentable and should be declared as such in a Rule 12(b) motion.  But, the '915 Patent claims nothing more than the longstanding commercial practice of calculating and preparing business tax returns on a generic computer.  It is invalid and should be held so without the Court and parties having to proceed through the case.  Also, PTP failed to plead the essential elements of contributory infringement.

PTP's other claims are also fatally defective.  Both federal and state trade secret counts, and the breach of contract count are barred by the relevant 3-year statute of limitations.  The Wisconsin state trade secret count is further contrary to law because the relevant statute does not apply to the alleged conduct that took place outside of the state.  Meanwhile, the Wisconsin unfair competition statute does not allow a private right of action under these circumstances.  PTP alleges that it does, but the statute plainly says otherwise.

The Court should dismiss all claims with prejudice because the defects above cannot be cured.  However, if leave to amend is allowed, Avalara asks that the Court also grant its concurrently filed Motion to Transfer to the Western District of Washington so that any refiled case will be in a venue more convenient for all parties and non-parties involved.

# II.  STATEMENT OF FACTS

Plaintiff, PTP OneClick, LLC ("PTP" or "Plaintiff"), filed its Complaint against Avalara, Inc. ("Avalara" or "Defendant") in this Court on October 22, 2018.  (*See* Complaint, hereinafter "Compl.")  PTP's Complaint purports to allege five counts: patent infringement,

misappropriation under federal and state trade secret laws, unfair competition, and breach of contract. (*Id.* ¶¶ 55-81.)

Avalara is a Washington corporation with its principal place of business in Seattle, Washington. (Compl. ¶¶ 3, 5.)[1] According to PTP, the alleged trade secret and/or confidential information was provided to Avalara in Seattle. (*Id.* ¶¶ 14-26.) PTP's only allegations connecting its claims to Wisconsin are that PTP has a member in Wisconsin (*id.* ¶ 5) and that Avalara has a satellite office in Wisconsin and has sold tax software in "Wisconsin and throughout the United States." (*See id.* ¶¶ 3, 6-7.) All key events related to the alleged misuse of PTP trade secret and confidential information, as well as Avalara's development of the products at issue, occurred outside of Wisconsin. (*See id.* ¶¶ 14-43, 48-54; ECF No. 7 ¶ 16.) PTP pleads no facts or allegations that Avalara developed the products at issue or misused its information in Wisconsin. As explained in connection with Avalara's concurrently filed motion to transfer, Avalara did not have a Green Bay office until it acquired another company in 2014, and no Green Bay employee has worked on Avalara's AvaTax, Returns or TrustFile products. *Id.*

PTP's Complaint pleads no explicit date when the Avalara Products were introduced. (*See id* ¶¶ 27-43, 61-81.) The Complaint acknowledges that the accused functionality was introduced into the Avalara Products shortly after an August 2011 meeting, alleging that "*after the August 2011 meeting*, the Avalara Products supported preparation of signature-ready tax returns for overlapping state, county, city, district, and special taxing jurisdictions." (*Id.* ¶ 35 (emphasis added); *see also id.* ¶ 64 (asserting Avalara's alleged misuse of trade secrets by ongoing and continued use occurring before the enactment of the DTSA on May 11, 2016).)

PTP attached to the Complaint as Exhibit 2 a letter agreement between PTP and Avalara. (Compl., Ex. 2 ("Letter Agreement").) Prior to their expiration, paragraphs 1-2 of the Letter Agreement prevented Avalara from disclosing or using (outside of a possible acquisition of PTP

---

[1] Avalara is concurrently filing a motion to transfer this case to the Western District of Washington. If the Court dismisses any claims without prejudice, the Court should direct that if PTP refiles those claims, it should do so in the Western District of Washington.

by Avalara) confidential information transmitted by PTP. (*Id.* ¶¶ 1-2.) The Letter Agreement, however, expressly provides that the confidentiality obligations (non-use and non-disclosure) set forth in paragraphs 1-2 expire three years from the date of the Letter Agreement:

> This letter agreement shall govern all Information received during the period from the date of this agreement …. *Our obligations of confidentiality under paragraphs 1 and 2 of this letter agreement shall expire three years from the date of this letter agreement.*

(*Id.* ¶ 10 (emphasis added).) Thus, under the August 1, 2011 Letter Agreement, Avalara was permitted to disclose or use PTP Information on or after August 1, 2014. (*Id.*) PTP's Complaint omits any mention of the second half of paragraph 10, which specifies the Letter Agreement's expiration. (*See* Compl. ¶ 42.) The Letter Agreement also has a choice of law provision, stating it is "governed by and construed in accordance with the laws of the State of California applicable to contracts between residents of that State and executed in and to be performed in that State, without giving effect to principles of conflicts of law." (Compl., Ex. 2, ¶ 9.)

### III. LEGAL STANDARDS APPLICABLE TO MOTIONS TO DISMISS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombl*y, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level …" *Twombly*, 550 U.S. at 555. It is not enough to plead facts "that merely create[] a suspicion [of] a legally cognizable right of action." *Id.* (first alteration added) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)). Likewise, a complaint is not sufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 446 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). A claim is sufficient only if it pleads sufficient facts to raise a *reasonable inference* the defendant is liable for alleged misconduct, and a court cannot assume that a plaintiff can prove facts it has not alleged. *See id.* at 678-79; *Associated Gen. Contractors of Cal. v. Cal. State*

*Council of Carpenters*, 459 U.S. 519, 528 (1993) ("It is not, however, proper to assume that the [plaintiff] can prove facts that it has not alleged….").

In deciding a motion to dismiss, a court may consider certain documents and information outside the four corners of the complaint without converting the motion to a summary judgment motion. For example, under Federal Rule of Civil Procedure 10(c), a "copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes," and a court may consider it in determining a motion to dismiss. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th. Cir. 2012) ("In deciding a Rule 12(b)(6) motion, the court may also consider documents attached to the pleading without converting the motion into one for summary judgment."). Indeed, when considering a contract that is part of a complaint, a "court is not bound to accept the pleader's allegations as to the effect of the exhibit but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material." *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th. Cir. 2002) (quoting 5 Wright & Miller, Federal Practice & Procedure: Civil 2d, § 1327 at 766 (1990)).

Similarly, a Court may consider information that is properly the subject of judicial notice, such as matters of public record, in deciding a motion to dismiss. *Snap-On Inc. v. Hunter Eng'g*, 29 F. Supp. 2d 965, 969 (E.D. Wis. 1998) (considering public records from the U.S. Patent and Trademark Office in determining a motion to dismiss); *Thomas & Betts Corp. v. Panduit Corp.*, 65 F.3d 654, 664 n.12 (7th Cir. 1995) (taking judicial notice of patent in a trade dress infringement case). A patent's specification and file history are both public records and part of the patent's intrinsic record that inform the scope and meaning of a patentee's claims. *See, e.g.*, *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 987 (Fed. Cir. 1995) ("the specification and prosecution history of a patent are public records"); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) (describing the prosecution history as part of the public record and the intrinsic evidence of a patent); *Biogen Idec., Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013) ("the entirety of a patent's file history captures the public record of the patentee's representations concerning the scope and meaning of the claims….")

## IV.    THE FACTS AND LAW COMPEL DISMISSAL OF ALL COUNTS

Each of PTP's five causes of action fail.  Count I, PTP's claim of patent infringement, fails entirely because the patent claims do not meet the subject matter requirements of 35 U.S.C. Section 101.  Counts II and III are time-barred by the relevant statutes of limitation and/or expiration of the confidentiality agreement, and Count III additionally should be dismissed because it requires an improper exterritorial application of the statute.  Further, Count IV relies on a statute that does not provide a private right of action.  Finally, as to Count V, PTP has failed to plead any facts supporting a contention that the claims are not time-barred.  PTP's claims each suffer from fatal flaws necessitating dismissal under Federal Rule of Civil Procedure 12(b)(6).

### A.    The '915 Patent Is Invalid Under 35 U.S.C. § 101.

It is black letter law that patents directed to abstract concepts are invalid under 35 U.S.C. Section 101.  *See, e.g.*, *Alice Corp. Party Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 134 S. Ct. 2347, 2354 (2014) ("'We have long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable.'") (citations omitted); *id.* at 2358 (the "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention"); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (claims to "methods of organizing human activity" are abstract even if performed using telephones and servers).  It is equally well settled that merely adding a generic computer—using run-of-the-mill technology to do what a person can do using pen and paper—fares no better.  *See, e.g.*, *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318, 1328 (Fed. Cir. 2016) (invalidating claims for which, "with the exception of generic computer-implemented steps, there is nothing in the claims themselves that foreclose them from being performed by a human, mentally or with pen and paper").

That is precisely the type of patent Plaintiff asserts here.  Indeed, the '915 Patent is directed at calculating and filing business tax returns.  (*See* Compl., Ex. 3 ("System and Method for Preparing Multi-Level Tax Returns"); *see id.* at Abstract ("A system for preparing state and

local sales and use tax returns….").)  Of course, it is axiomatic that preparing tax returns is a task millions of people have done using pen and paper for generations.  And, while the '915 Patent purports to claim a "computer-implemented method" of performing this pen-and-paper task, this simply is not enough under the law.  The bottom line is that the '915 Patent is invalid, as is apparent on its face, and that the patent count should be dismissed without further ado.

### 1. The Court Applies a Two-Step Analysis When Ruling on Motions to Dismiss Under 35 U.S.C. § 101.

In deciding a motion to dismiss based on Section 101, courts apply a two-step analysis. *See, e.g.*, *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 132 S. Ct. 1289 (2012).  In Step 1, the court must determine whether the claims at issue are directed to one of the classes of patent-ineligible concepts (e.g., abstract ideas).  In Step 2, the court must then decide whether the claim(s) recite(s) an "inventive concept" that is "sufficient to transform the claimed abstract idea into a patent-eligible application." *See, e.g.*, *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1382, 1384 (Fed. Cir. 2018) (applying two-step test for patent-eligibility to an appeal from a Rule 12(b)(6) dismissal).

At Step 1, the Supreme Court has instructed lower courts to consider whether the claims at issue are directed to "a patent-ineligible concept" such as a law of nature, natural phenomenon, or abstract idea.  *Alice*, 134 S. Ct. 2355 (citing *Mayo Collaborative Servs.*, 566 U.S. 66, 132 S. Ct. 1289).  To aid this inquiry, the Federal Circuit often uses a "pencil and paper" test to question whether the patented method could be carried out with pencil and paper instead of a computer.  *See Intellectual Ventures I*, 838 F.3d at 1328 (Fed. Cir. 2016) (patent is abstract because it is directed to a method that humans have and can complete using pencil and paper); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097-98 (Fed. Cir. 2016).  Namely, to determine if a patent is directed at an abstract idea, the court may consider whether the claimed subject matter "can be performed in the human mind, or by a human using a pen and paper." *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371-72 (Fed. Cir. 2011) (citing *Parker v. Flook*, 437 U.S. 584, 586, 437 U.S. 584 (1978) (applying pencil and paper test)); *see*

*also OpenTV, Inc. v. Apple, Inc*., No. 14-cv-01622, 2015 WL 1535328, at *4 (N.D. Cal. Apr. 6, 2015) ("The pen-and-paper test … is an analytical tool to test whether the underlying concept described in the claims is abstract, and thus not patent-eligible.") (citing cases).

At Step 2, the courts look to whether the claimed methods "transform" the nature of the claim into a patent-eligible application, for example, by adding more than a generic computer that improves the functioning of the computer itself such as by making computers faster.  That is, implementing abstract ideas on one or more generic computing components is not enough to make them patentable.  *See Intellectual Ventures I*, 838 F.3d at 1318-19.  This is a crucial aspect of patent-eligibility case law following *Alice*, which itself held that "mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention," particularly given "the ubiquity of computers."  *Alice*, 134 S. Ct. at 2358; *see also Affinity Labs of Tex., LLC v. Amazon.Com, Inc*., No. 6:15-cv-0029, 2015 WL 3757497, at *8 (W.D. Tex. June 12, 2015) ("the inclusion of some concrete claim elements—even elements associated with computer- or Internet-based technology—is insufficient to indicate that the claims as a whole are not directed to an abstract idea") (internal quotations omitted).  Federal Circuit cases are in accord.[2]

---

[2] *See, e.g*., *BSG Tech LLC v. Buyseasons, Inc*., 899 F.3d 1281, 1287 (Fed. Cir. 2018) ("[A] claim is not patent eligible merely because it applies an abstract idea in a narrow way."); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017) ("At best, the constructions propose the use of generic computer components to carry out the recited abstract idea, but that is not sufficient." (citing *In re TLI Commc'ns LLC Patent Litig*., 823 F.3d at 611 (holding that, despite reciting "concrete, tangible components," the claims were directed to an abstract idea where "the physical components merely provide[d] a generic environment in which to carry out the abstract idea"))), *cert. denied*, No. 18-124, 2018 WL 3626097 (U.S. Oct. 15, 2018); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014) ("The claims invocation of the Internet also adds no inventive concept. As we have held, the use of the Internet is not sufficient to save otherwise abstract claims from ineligibility … [g]iven the prevalence of the Internet"), *cert. denied sub nom.*, *Ultramercial, LLC v. WildTangent, Inc.*, 135 S. Ct. 2907 (2015); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d at 1374 ("CyberSource contends that, by definition, a tangible, man-made article of manufacture such as a 'computer readable medium containing program instructions' cannot possibly fall within any of the three patent-eligibility exceptions … We disagree.").

Indeed, to "transform" ineligible subject matter, claims must at a minimum apply conventional technological elements in a novel and unconventional way and not merely use a computer as a "tool" to implement the abstract idea. *See, e.g.*, *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300-01 (Fed. Cir. 2016), *cert. denied*, 138 S. Ct. 469, 199 L. Ed. 2d 356 (2017) ("The solution requires arguably generic components, including network devices and 'gatherers' which 'gather' information. However, the claim's enhancing limitation necessarily requires that these generic components operate in an unconventional manner to achieve an improvement in computer functionality."); *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349-52 (Fed. Cir. 2016)). It is not sufficient to simply use "already available computers, with their already available basic functions, … as tools in executing the claimed process." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1169-1170 (Fed. Cir. 2018); *Alice*, 134 S. Ct. at 2359; *In Re TLI Commc'ns*, 823 F.3d at 614 ("[M]ere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea. Rather, the components must involve more than performance of 'well-understood, routine, conventional activit[ies]' previously known to the industry.'"); *see also Amdocs (Israel)*, 841 F.3d at 1299-1300 (collecting authority) (distinguishing ineligible "abstract-idea-based solutions[s] implemented with generic technical components in a conventional way" from the eligible "technology-based solution" and "software-based invention[] that *improve[s] the performance of the computer system itself*") (emphasis added).

## 2. The Claims of the '915 Patent Fail the *Alice* Two-Part Test.

### a. *The Claims Are All Directed to Calculating and Filing Business Taxes*.

The '915 Patent has twenty-two claims, all directed to the abstract idea of calculating and filing business tax returns. (*See* Compl., Ex. 3.) There are only two independent claims, claim 1 and claim 12. (*See id.*) Claim 1 recites:

> 1. A computer-implemented method of automatically preparing tax returns of a taxable entity comprising:
>
> receiving by a computer tax information associated with the taxable entity,

wherein the tax information includes information regarding a location and a transaction associated with the taxable entity;

automatically determining by the computer a plurality of taxing authorities associated with the location and the transaction;

automatically determining by the computer multi-level tax rates associated with the plurality of taxing authorities based on the received tax information;

automatically calculating by the computer one or more tax amounts based on the received tax information and the multi-level tax rates;

automatically determining by the computer multi-level tax return information based on the received tax information and the one or more calculated tax amounts; and

transmitting over a computer network the multi-level tax return information to a computer system associated with one of the plurality of taxing authorities associated with the multi-level tax return information.

(*See id.* at claim 1.) These steps amount to nothing more than the addition of a computer into the mundane process of preparing and filing a business tax return: identifying a transaction, determining the tax rates applicable to that transaction depending on the location (*e.g.*, city, state, etc.), calculating the tax, and preparing and filing returns the government. Indeed, the patent admits that generations of citizens have undertaken this process. (*Id.* at 26:41-48 ("In accordance with the present invention, the system determines the appropriate tax return forms that are required based on the zip code of the location of the business and fills in the appropriate data into the appropriate places in those tax forms thus *greatly facilitating the preparation of tax returns*….") (emphasis added).) Claim 1 merely adds that the process is "automatic" on "a computer" which transmits the tax information over "a computer network."

The other independent claim, claim 12, is no different. It requires the same steps, adding additional generic elements such as a "database" and a "software application." (*See id.* at claim 12.) For purposes of patent eligibility under Section 101, the two independent claims are indistinguishable, and reduce to the use of generic technology elements—a "computer" and/or a "database"—for calculating and filing business tax returns. (*See id.* at claims 1 & 12.) Defendants therefore properly rely on claim 1 and its dependent claims as representative. *See*

*Content Extraction & Transmission*, 776 F.3d at 1348 (finding claim representative when others were "'substantially similar and linked to the same abstract idea'") (citations omitted).

### b. *Step 1: Calculating and Filing Business Taxes is an Abstract Concept.*

Viewed in light of Federal Circuit decisions, it is clear that claim 1 is directed to an abstract idea. The steps recited in claim 1 are directed to long-known and human-performed processes: calculating and filing business tax returns. (*See* Compl., Ex. 3 at claim 1.) At their core, these steps boil down to the annual process of gathering tax-related information, such as a list of transactions and the places they occurred, determining the correct city/county/state/federal rates that apply, calculating those taxes, and filing a return with the calculated taxes. None of these steps is more than an abstract idea. And the only difference between the steps recited in claim 1 and how humans have paid taxes for centuries is that the claim uses a "computer."

The "pen and paper" test underscores that claim 1 is an abstract concept. Calculating taxes and preparing and filing tax returns—even with respect to multiple tax rates in multiple (e.g., state and local) jurisdictions—was done by accountants and businesspeople generations before 2005, the earliest claimed priority date for the '915 Patent. This is acknowledged on the face of the patent, which describes the tedious process of manually calculating taxes and preparing and filing tax returns for multiple levels of taxes (including state, local, and/or municipal taxes). (*See* Compl., Ex. 3 at Abstract, 1:20-27, 1:31-60 (describing prior art systems and manual preparation), *id.* at 2:5-8 ("The system is also configured to facilitate preparation of local municipal sales and use tax returns which are normally cumbersome and time consuming to prepare.").) Claim 1 simply further automates with a generic computer what the prior art already accomplished: "[a]lthough these systems facilitate sales and use tax preparation, they do not extend down to the level of local municipal taxing authorities. … As such, accountants and business owners, in addition to the systems provided above, must determine and calculate returns for such local taxing authorities." (*Id.* at 1:43-51.) The only purported advance of claim 1— using a general-purpose computer to calculate and file business taxes—is an abstract idea.

Courts have determined that similar patent claims are ineligible. *See, e.g.*, *Voter Verified, Inc.*, 887 F.3d at 1385 (invalidating claims that were "as a whole … drawn to the concept of voting, verifying the vote, and submitting the vote for tabulation," noting that [h]umans have performed this fundamental activity that forms the basis of our democracy for hundreds of years."); *Bilski v. Kappos*, 561 U.S. 593, 130 S. Ct. 3218, 3225 (2010) (invalidating claims directed to automatically hedging against risk); *Alice*, 134 S.Ct. at 2359-2360 (invalidating claims directed to intermediated settlement on a generic computer). The '915 Patent fares no better, being similarly directed to an abstract process long-performed in the human mind and on paper. Accordingly, the claims are directed to an abstract idea under step 1 of the *Alice* test.

### c. *Step 2: The Claims Add Only Generic Computers and Networks.*

Claim 1 likewise fails *Alice* step 2. As noted above, under step 2, the additional elements must be more than token steps or generic components, such as "computers." The *Alice* decision and its progeny are crystal clear: "[t]he introduction of a computer into the claims does not alter the analysis at *Mayo* step two." *Alice* at 2357-58. "[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 2358. Similarly, reciting a generic database or generic software is insufficient to transform claims directed to an abstract idea because, under *Alice* step 2, the claims' "transformative elements must supply an 'inventive concept' that ensures the patent amounts to 'significantly more than a patent upon the [ineligible concept] itself.'" *BSG Tech LLC*, 899 F.3d at 1290-1291.

But claim 1 of the '915 Patent fails to transform the abstract concept of calculating and filing business tax returns. Claim 1 adds only a generic "computer" and "computer network" to the claim—"[a] computer-implemented method," performing various steps "by a computer," and "transmitting over a computer network" the tax returns. (Compl., Ex. 3 at claim 1.) As the Court stated in *Alice*, the "relevant question is whether the claims here do more than simply instruct the practitioner to implement the abstract idea … on a generic computer." *Alice*, 573 U.S. 208, 134 S. Ct. at 2359. Here, as in *Alice,* the answer to that question is plainly no—claim 1

adds only generic computer technology to abstract ideas that tax-preparers have performed for years.

*SAP America v. InvestPic*, 898 F.3d at 1169-70, is also instructive. In *SAP America*, the claims related to certain statistical analyses of investment information, reciting various generic computers and/or computer technology, including databases and processors, for conducting this analysis. These generic computer elements did not transform the claimed abstract ideas because they "require[d] no improved computer resources [patentee] claim[ed] to have invented, just already available computers, with their already available basic functions, to use as tools in executing the claimed process." Rather, the claims recited methods for analyzing investment data (a long-standing human process), some of which were performed "over an information network," "processors," and a "financial data database." *Id.* at 1164-65. None of the generic components used to perform the claimed method or functions provided an inventive concept. *Id.* at 1170.

*BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, is likewise instructive. There, the Federal Circuit affirmed a district court decision that claims "directed to a 'self-evolving generic index' for organizing information stored in a database" were invalid under Section 101. *See id.* at 1283. The claims at issue recited a computer network ("wide area network") where the claimed methods involved performing indexing and/or searching in a "database." *Id.* at 1284-85. The claimed generic database and wide area network did not transform the claims because the claims merely applied an abstract idea "using conventional and well-understood techniques." *See id.* at 1289-90. Here, the generically claimed "computer," "computer network," "database," and "software application" in the '915 Patent fail to add a transformative inventive concept to the claimed long-standing human processes of collecting tax information, calculating taxes, and preparing and filing a return.

Other cases, including *Voter Verified v. Election Sys. & Software*, 887 F.3d at 1386, are in accord. In *Voter Verified*, the claimed "standard personal computer," "visual display," and

"keyboard," were standard components insufficient to transform the abstract idea of "voting, verifying the vote, and submitting the vote for tabulation" humans had performed for years.

So too here. These claims use the computer, database, and network as tools to do what humans had done with pencil and paper for generations. Nothing about the claims improves the functionality of the computer or the network by making them faster or easier to use. Thus, the abstract concept of calculating and filing business taxes is not "transformed" by the addition of these generic elements. And claim 1 recites nothing more. Accordingly, failing *Alice* step 2, claim 1 of '915 Patent is invalid under Section 101.

### 3. The Dependent Claims Do Nothing to Salvage Patentability.

The dependent claims (claims 2-11) do not change this calculus, simply piling on more abstract ideas while adding nothing that improves how the computer functions. (*See* Compl., Ex. 3 at claims 2 ("automatically populating a plurality of tax forms"), 3 (forms include a "state taxing authority"), 4 (return prepared for "all taxing authorities"), 5 ("different types of tax rates"), 6 (including "sales tax" rates and "use tax" rates), 7 (including sales and use tax in response to "receipt of sales and use tax information"), 8 (calculating "one or more tax deductions"), 9 ("formatting" the return as "required by one or more of the plurality of taxing authorities"), 10 ("receiving payment information" and "transmitting … payment information"), & 11 ("polling" the taxing authority for "confirmation of receipt" of return).) The Federal Circuit has been clear that such additional requirements do not transform otherwise unpatentable claims.[3]

---

[3] *See, e.g.*, *BSG Tech.*, 899 F.3d at 1287 n.1 ("Although these [dependent] claims cover a narrower range of data input than [independent] claim 1, the claims' focus remains on the abstract idea of considering historical usage information while inputting data."); *Intellectual Ventures I LLC v. Erie Indem. Co.*, 711 F. App'x 1012, 1018 (Fed. Cir. 2017) ("For the dependent claims' identification of files based on checksums, we have stated that '[t]he dependent claims' narrowing [of long familiar practices] to particular types of ... relationships ... does not change the [*Alice* step one] analysis.'" (quoting *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014))); *In re TLI Commc'ns*, 823 F.3d at 614-15 ("Dependent claims 10 and 11 respectively recite an 'image analysis unit for determining quality of the digital images' and a 'control unit for controlling resolution of digital images.' … Such vague, functional descriptions of server components are insufficient to transform the abstract idea into a patent-

### 4. Claim 12 and Its Dependent Claims Are Equally Unpatentable.

As noted above, for purposes of Section 101, claim 1 is representative of the claims of the '915 Patent. The Court thus need look no further to grant Defendants' motion. In any event, claim 12 and its dependent claims suffer from the same shortcomings as claim 1. Like claim 1, claim 12 also claims the abstract idea of a "computer-implemented system for automatically preparing tax returns." (Compl., Ex. 3 at claim 12.) And there is nothing transformative about the remaining elements or dependent claims, which include a generic computer ("computer-implemented system"), computer network ("transmit over a computer network"), database ("database for storing tax information"), and software ("software application."). (*Id.* at claim 12; *id.* at claims 13-15 (filling out multiple tax forms for state and local taxes), 16-17 (dealing with multiple tax rates, such as a use rate and a sales rate), 18-19 (calculating and preparing tax returns and deduction when the data was received), & 20-22 (filing returns in the proper format, with payment and then later checking on the status of the return)); *see also In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d at 614-15 ("Such vague, functional descriptions of server components are insufficient to transform the abstract idea into a patent-eligible invention.").

### 5. The Patent Office Did Not Fully Analyze These Section 101 Issues.

During the prosecution of the '915 Patent, the Examiner at the U.S. Patent and Trademark Office rejected the claims of the '915 Patent, asserting that the claims recited a patent-ineligible abstract idea under 35 U.S.C. § 101. (Decl. of Brandon Lewis ("Lewis Decl.") Ex. 2, 12-20-2013 Office Action at 3-4 (claims recite an abstract idea with only a nominal recitation of a typical, generic computer).) PTP appealed this rejection to the Patent Office's Board of Patent Appeals and Interferences ("BPAI"), arguing that the automation of tax

---

eligible invention."); *Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1374-75 n.9 (Fed. Cir. 2017) (dependent claims' "hash identifier [limitation] is a generic and routine concept that does not transform the claims to a patent eligible application of the abstract idea"); *Content Extraction & Transmission LLC*, 776 F.3d at 1348-49 ("[A]ll of the additional limitations … recite well-known, routine, and conventional functions of scanners and computers. Thus, while these claims may have a narrower scope than the representative claims, no claim contains an 'inventive concept' that transforms the corresponding claim into a patent-eligible application of the otherwise ineligible abstract idea.").

preparation previously done on paper was patentable. (*Id.*, Ex. 2, 8-19-2014 Appeal Brief at 7-11 (asserting that the claims provide "a particular technological solution to an unmet problem," that the Examiner failed to identify the abstract idea recited by the claims, and that the automatic nature of tax preparation recited more than an abstract idea).) In response, the Examiner provided a less-than-one-page formulaic restatement of the Examiner's original rejection with no citation to the relevant case law or any explanation of what abstract idea the patent claimed or why the claims recite no more than a generic computer. (*Id.*, Ex. 2, 12-1-2014 Examiner Answer at 2.[4]) The Examiner did not cite *Alice* or any of the 15-plus Federal Circuit cases cited above. He did not explain how the added computer components were generic and used merely as tools. He did not explain how the claims failed to include any "transformative concept" that made the computer faster or function better. Indeed, virtually every aspect of a proper response given *Alice's* and its now-voluminous progeny was omitted.

The BPAI noted this and held that the Examiner had failed to adequately support or explain the reasoning behind the rejection. On this basis, the BPAI reversed the Examiner. (*Id.* Ex. 2, 3-1-2017 BPAI Decision at 3-4 ("the examiner summarily states that …. We determine that this statement does not address sufficiently the actual limitations of any claim").)

The BPAI's reversal was grounded in the Examiner's failure to support the rejection rather than an independent evaluation of the merits under Section 101. The BPAI expressly grounded its decision in the Examiner's failure to address the issues and to support his rejection. This can be ascertained from a quick review of the decision on appeal, where, in less than a page, the BPAI stated the following without ever affirmatively holding that the '915 Patent is directed to patentable subject matter under Section 101:

---

[4] The Examiner's Answer was refiled on 2-11-2015 with the addition of the office action date required by USPTO procedures. With the page renumbering, the Section 101 briefing, the substance of which was identical, was renumbered as pages 3-4. (*See* Lewis Decl., Ex. 2 ('915 FH, 2-11-2015) at 3-4.) Thus, while this Motion refers to the Examiner's original Answer, the BPAI citations are to the re-filed Answer.

> For example, *this statement does not establish the basis* on which the Examiner determines that the claimed [computer] is a generic computer. Further, *this statement does not establish* that, even if the claimed computer is a generic computer, other limitations in the claim are insufficient to transform the claim as required by the second step of the *Alice* test. Still further, although Appellants essentially argue that the computer network recited in claim 1, for example, transforms the claim, *the Examiner does not address this argument, or otherwise explain* why the recitation of a computer network is insufficient to transform the claim. Appeal Br. 10.

(*Id.* at 4 (emphases added)). The BPAI determined that, "based on the foregoing … the Examiner fail[ed] to establish that the features of any claim, when considered as an ordered combination, fail to transform the claim as required by *Alice* test, and, therefore, do not sustain the Examiner's rejection of claims 22- 3 under 35 U.S.C. § 101." *Id.*

Any contention that the Patent Office fully analyzed the patent eligibility issues presented by the '915 Patent and found it to be directed to more than an abstract idea is belied by the public record of the prosecution of the '915 Patent. While PTP did successfully appeal the Examiner's Section 101 rejection, the BPAI's decision makes abundantly clear that the patent-eligibility issues were not fully tested. (*See id.*) The BPAI did not affirmatively hold the '915 Patent was patent-eligible or undertake any independent analysis. The BPAI decision was explicitly based on the Examiner's failure to adequately explain and support the rejection.

Defendant Avalara now makes the arguments and highlights the Supreme Court and Federal Circuit precedent that the Examiner omitted. Upon full consideration, rather than the limited arguments raised by the Examiner, the claims are invalid under Section 101.

**6. Dismissal *Now*—at the Rule 12 Stage—Is Warranted.**

Where, as here, a patent on its face fails to claim eligible subject matter, dismissal under Rule 12 is warranted. *See, e.g.*, *Data Engine Techs. LLC v. Google LLC*, -- F.3d --, 2018 WL 4868029, at *5 (Fed. Cir. Oct. 9, 2018) ("Patent eligibility can be determined on the pleadings under Rule 12(c) when there are no factual allegations that, when taken as true, prevent resolving the eligibility question as a matter of law."); *SAP Am., Inc.*, 898 F.3d at 1166 (patent eligibility "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion"). Indeed, the Federal Circuit has expressly approved dismissing patent infringement claims at the pleadings

stage on the basis of ineligible subject matter when no claim construction issues would prevent resolution of the motion. *See, e.g.*, *FairWarning IP*, 839 F.3d at 1098 (rejecting argument that claim construction was necessary when the proposed construction simply tied the claim to a computer implementation because "[r]egardless of the resolution of this construction issue, the '500 patent claims patent-ineligible subject matter"); *Voter Verified, Inc.*, 887 F.3d at 1384-86; *Data Engine Techs. LLC*, -- F.3d --, 2018 WL 4868029, at *5.

Here, the claims and the specification—both of which are attached to the Complaint—are unequivocal as to the abstract nature of the "invention." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (facts in exhibits can be considered in a motion to dismiss).[5] And no claim limitations are written using complicated computer terms that might require interpretation in a special claim construction hearing—the claims on their face add only generic computer technology, e.g., are "computer-implemented," or include a "computer network," "database," and "software application." Thus, no claim construction is required before deciding this issue. *See e.g.*, *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1374 (Fed. Cir. 2016) ("In many cases, too, evaluation of a patent claim's subject matter eligibility under § 101 can proceed even before a formal claim construction."); *Bancorp Servs., L.L.C. v. Sun life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[C]laim construction is not an inviolable prerequisite to a validity determination under § 101."); *Voter Verified*, 887 F.3d at 1384-86 (upholding dismissal and stating, "[t]he factual allegations here, taken as true, do not prevent a § 101 determination at the Rule 12(b)(6) stage...."); *FairWarning IP*, 839 F.3d at 1098. Dismissal now—without the need for claim construction or further discovery—is appropriate.

---

[5] Paying taxes is certainly not new—as the saying goes, only two things are inevitable, death and taxes. Not surprisingly, the '915 Patent admits that calculating and filing such taxes was known. (*E.g.*, Compl., Ex. 3 at 1:30-60.) If Plaintiffs dispute this, however, Defendants request the Court take judicial notice that, as is readily apparent, prior to the '915 Patent people calculated and filed business taxes. *See Pugh v. Tribune Co.*, 521 F.3d 686, 691 n.2 (7th Cir. 2008).

**B.      PTP Failed to Plead the Material Elements of Contributory Infringement.**

PTP's Count for patent infringement is also defective because it fails to plead even the bare essential elements.  Paragraph 58 of PTP's Complaint alleges that "selling or offering to sell the Avalara Products to its users constitutes contributory infringement under 35 U.S.C. § 271(c)."  (Compl. ¶ 58.)  In support, of this contention PTP alleges the following: (1) "Avalara has encouraged and will intentionally encourage acts of direct infringement" (2) "with knowledge of the '915 Patent", and (3) with "knowledge that the Avalara Products infringe [the '915 Patent]."  (*Id.*)  But a claim for contributory infringement requires more.

Specifically, to allege a claim for contributory infringement, a plaintiff must plead that the accused products do not have any substantial non-infringing uses.  35 U.S.C. § 271(c) ("Whoever offers to sell or sells … a component of a patented machine … or a material or apparatus for use in practicing a patented process … knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use….");  *In re Bill of Lading*, 681 F.3d 1323, 1337 (Fed. Cir. 2012) ("To state a claim for contributory infringement, therefore, a plaintiff must, among other things, plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses."); *id.* at 1338 ("[T]he inquiry focuses on whether the accused products can be used for purposes *other than* infringement.").  Most courts require more than the mere allegation, but even the most permissive courts require at least a bare allegation that the accused products have no substantial non-infringing uses.  *Compare Windy City Innovations, LLC v. Microsoft Corp.*, 193 F. Supp. 3d 1109, 1116-17  (N.D. Cal. 2016); *Intellicheck Mobilisa, Inc. v. Wizz Sys., LLC*, No. 6:15-cv-1168-JRG, 2016 WL 258524, at *5 (W.D. Wash. Jan. 20, 2016), *with Westmoreland Advanced Materials, Inc. v. Allied Mineral Prods., Inc.*, Nos. 16-cv-0263, 16-cv-604, 2016 WL 3227447, at *5 (W.D. Penn. June 13, 2016); *Uniloc USA, Inc. v. Avaya Inc.*, No. 6:15-cv-1168-JRG, 2016 WL 7042236, at *4-5 (E.D. Tex. May 13, 2016).  That distinction is irrelevant here since PTP fails to recite even a bare allegation that the Avalara Products have no substantial non-infringing uses.  PTP's claim for

patent infringement accordingly must be dismissed, at least as to its claim for contributory infringement.

## C.    Counts II and III (Trade Secret Misappropriation) Should Be Dismissed Because They Are Time-Barred.

PTP's Counts II and III are claims for trade secret misappropriation under the federal (DTSA) and state (Wisconsin Uniform Trade Secrets Act) trade secret statutes. Neither of PTP's trade secret counts state a valid claim for relief. Specifically, both are barred by the relevant statute(s) of limitations. Further, even if the claims were based on alleged conduct that occurred within the relevant statute of limitations period, such claims are necessarily barred because PTP's confidentiality obligations expired years before the period within the statute of limitations.

### 1.    The Relevant Three-Year Statutes of Limitation Are Properly Enforced via Dismissal.

Under Federal Rule of Civil Procedure 9(f), "[a]n allegation of time or place is material when testing the sufficiency of a pleading." Accordingly, the Seventh Circuit has held that a motion to dismiss can raise a failure to meet the relevant statute of limitations. *Kincheloe v. Farmer*, 214 F.2d 604, 605 (7th. Cir. 1954) ("[I]t would be illogical and futile to think that the defendant was required to plead as an affirmative defense that which the plaintiff alleged in his complaint and which he was required to allege by Rule 9(f)."); *Butcher v. United Elec. Coal Co.*, 174 F.2d 1003, 1005-1006 (7th Cir. 1949) ("[I]f a defect is apparent on the face of the complaint, it may be raised by a motion to dismiss for failure to state a claim"); *see also Century Hardware Corp. v. Powernail Co.*, 282 F. Supp. 223, 224-225 (E.D. Wis. 1968).

Both the Federal Defend Trade Secrets act and the Wisconsin Uniform Trade Secrets Act bar actions for trade secret misappropriation based on misappropriation that commenced more than three years prior to the filing of a complaint. The Federal statute implementing the Defend Trade Secrets Act bars any claim based on misappropriation that commenced more than three years prior. 18 U.S.C. § 1836(d) ("A civil action under subsection (b) may not be commenced later than 3 years after the date on which the misappropriation with respect to which the action would relate is discovered or by the exercise of reasonable diligence should have been

discovered. For purposes of this subsection, a continuing misappropriation constitutes a single claim of misappropriation."). Notably, this statute of limitations explicitly provides that a continuing misappropriation is a single claim and that the statute of limitations begins to run when the actions giving rise to the alleged misappropriation could have been discovered by "reasonable diligence." *See id.* Accordingly, PTP's DTSA claim is barred unless it avers that the purported trade secret misappropriation began or became discoverable on or after October 22, 2015 (three years prior to the date it filed its Complaint).

A substantively identical statute of limitations applies to the Wisconsin Trade Secrets Act. Specifically, Wisconsin Statute Section 893.51(2) provides: "(2) An action under s. 134.90 [the Wisconsin Trade Secret Act] shall be commenced within 3 years after the misappropriation of a trade secret is discovered or should have been discovered by the exercise of reasonable diligence. A continuing misappropriation constitutes a single claim."[6] Section 893.51 also provides that a continuing misappropriation is a single claim, and that such a claim is barred unless it is filed within three years of when the misappropriation could "have been discovered by the exercise of reasonable diligence." *See id.* Thus, unless based on conduct occurring after October 22, 2015, PTP's Wisconsin Trade Secret claims are also barred.

### 2. PTP Pleads No Facts Even Suggesting that the Alleged Trade Secret Misappropriation Occurred, Much Less Began, After October 22, 2015.

PTP's Complaint is devoid of any allegations that the alleged misappropriation—incorporating PTP's supposed trade secrets into the Avalara Products—began or became public only after October 22, 2015. Indeed, PTP's Complaint expressly alleges that the accused products began to incorporate and use the purported trade secrets *prior to* the enactment of the DTSA on May 11, 2016. (Compl. ¶ 64.) The Complaint further recites that Avalara misused the trade secret information because "*after the August 2011 meeting*, the Avalara Products supported

---

[6] Though the alleged injuries arising from and actions giving rise to trade secret misappropriation happened outside the state of Wisconsin, under Wisconsin's borrowing statute (Wis. Stat. § 893.07) the shorter of the Wisconsin and the applicable foreign statute of limitation applies. Accordingly, the statute of limitation is at most three years (the limit under Wisconsin law).

preparation of signature-ready tax returns for overlapping state, county, city, district, and special taxing jurisdictions," thus asserting that the misappropriation occurred soon after August 2011, well before the latest non-barred date under the applicable three-year statutes of limitation. (*Id.* ¶ 35 (emphasis added).) Because PTP's Complaint fails to allege that PTP would not have discovered the alleged misappropriation prior to October 22, 2015, by exercising reasonable diligence, as required by the applicable statutes of limitation, and because the Complaint further alleges facts that infer that the alleged misuse occurred well prior to October 2015, PTP's trade secret allegations are time-barred by the relevant statutes of limitation.

**3.     Any Claim for Misappropriation Based on Actions Within the Statute of Limitations Period Also Fails to State a Claim.**

Even if PTP had pled that the alleged misuse of PTP trade secrets began only after October 22, 2015, PTP would still not be able to state a claim upon which relief can be granted. The relevant confidentiality agreement, according to PTP's allegations, is the Letter Agreement signed on August 1, 2011. (*See* Compl. ¶¶ 16-17, 22-25, 27-43.) That agreement specifically provides that Avalara's confidentiality obligations would expire as of August 1, 2014, "three. years from the date of this letter agreement," which was signed on and dated August 1, 2011. (Compl., Ex. 2 ¶ 10.) Accordingly, any use of information from PTP, including what it now contends to be PTP's trade secret and/or confidential information, by Avalara on or after August 1, 2014, would expressly be permitted by the Letter Agreement. *See ECT Int'l, Inc. v. Zwerlein*, 228 Wis. 2d 343, 355, 597 N.W.2d 479 (Ct. App. 1999) ("By limiting the period in which an employee agrees not to divulge trade secrets, [an employer] manifested its intent that after one year there is no need to maintain the secrecy…."). Thus, any use by Avalara would not be actionable under the trade secret statutes plead by Avalara because the use was either expressly permitted by the Letter Agreement (to the extent it occurred on or after August 1, 2014) or barred by the applicable statute(s) of limitation (to the extent it occurred prior to October 22, 2015). Indeed, any use that began between August 1, 2014, and October 22, 2015, would be both permitted by the Letter Agreement *and* barred under the statute(s) of limitations.

**D. Count III (Misappropriation Under the WUTSA) Must Additionally Be Dismissed Because the Allegations Are Beyond the Limited Extraterritorial Reach of the WUTSA.**

PTP's Complaint alleges that, after a meeting in Seattle, Washington, a Washington company misappropriated trade secrets of an Illinois company. (Compl. ¶¶ 2, 3, 16.) The only allegations related to Wisconsin are that PTP has a "member" in Wisconsin, Avalara sells some product in the state and has an office in Green Bay. (*Id.* ¶¶ 3, 5, 7.) PTP does not allege that the Green Bay office is related to its misappropriation of trade secrets claim. Indeed, it could not, because there is no connection. (ECF No. 7 ¶ 16.) Because the entirety of the complained-of conduct occurred outside of Wisconsin, PTP's claim is beyond the reach of WUTSA.[7]

**1. The Wisconsin Trade Secret Act Has Limited Extraterritorial Reach.**

Wisconsin's Uniform Trade Secrets Act, codified at § 134.90, Wis. Stats., does not explicitly address its application to conduct that takes place outside of the state. Nor does there appear to be case law on the extraterritorial reach of the Act. And there is scant informative case law on the extraterritorial reach of other states' trade secrets acts. *See, e.g., Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. Inc.*, No. C 07-05248 JW, 2008 WL 11398913, at *6-7 (N.D. Cal. Feb. 29, 2008). In *Applied Materials*, the Northern District of California held, rather unremarkably, that the California Trade Secrets Act applies where defendants allegedly misappropriated a California company's trade secrets, thus causing injury in California.

Any analysis of the Wisconsin Trade Secrets Act's extraterritoriality must begin with the statutory presumption against extraterritorial application of state laws. "The extraterritoriality principle is well established in Supreme Court precedent, dating at least to *Bonaparte v. Tax Court*, in which the Court held that "[n]o state can legislate except with reference to its own jurisdiction." *Dean Foods Co. v. Brancel*, 187 F.3d 609, 614-15 (7th Cir. 1999) (citing 104

---

[7] For the purpose of this Motion, Avalara does not dispute that the Court has personal jurisdiction over it, given that Avalara has an office in this district. "However, what is at issue in this case is not the jurisdiction of the court over defendants but the legislative jurisdiction of [the State] over defendants' conduct." *Emergency One, Inc. v. Waterous Co.*, 23 F. Supp. 2d 959, 972 (E.D. Wis. 1998) ("The concepts of judicial jurisdiction and legislative jurisdiction are linked but distinct, and are legitimized and constrained by different policies.").

U.S. 592, 594, 26 L.Ed. 845 (1881)). "As a general proposition, Wisconsin statutes are to be construed and considered as relating to people and institutions within the state of Wisconsin, as intraterritorial and not extraterritorial." *State v. Pierce*, 191 Wis. 1, 209 N.W. 693, 694 (1926); *see also Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 296 Ill. Dec. 448, 835 N.E.2d 801, 852 (2005) (Like federal courts, Illinois courts employ "the long-standing rule of construction … which holds that 'a statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute.'"). Thus, Section 134.90 should apply to conduct within Wisconsin, rather than having extraterritorial effect.

## 2. PTP's Claims Require Forbidden Extraterritorial Application of the WUTSA.

The question then becomes, does PTP's claim require extraterritorial application of the Wisconsin Trade Secrets Act? The answer, under any standard used in analogous areas, is yes. As such, Count III should be dismissed.

First, the extraterritorial reach of the federal Defend Trade Secrets Act, is instructive:

> Applicability to conduct outside the United States: This chapter [18 U.S.C. §§ 1831 et seq.] also applies to conduct occurring outside the United States if— (1) the offender is a natural person who is a citizen or permanent resident alien of the United States, or an organization organized under the laws of the United States or a State or political subdivision thereof; or (2) an act in furtherance of the offense was committed in the United States.

18 U.S.C. § 1837. Applying these standards, the Wisconsin statute would not apply to the alleged conduct here. Avalara is not a Wisconsin corporation nor is there any allegation that Avalara committed any offense in Wisconsin.

But in any event, the DTSA standard is likely too permissive. "Congress has the power to cast its net more widely but must say so. States lack any comparable power to reach outside their borders, making the presumption of exclusive domestic application even stronger." *K-S Pharmacies, Inc. v. Am. Home Prod. Corp.*, 962 F.2d 728, 730 (7th Cir. 1992). Accordingly, this Court can also look to case law considering the extraterritorial effect of other Wisconsin laws,

keeping in mind that "as the legal rules we apply here make clear, the fact that a particular transaction may affect or impact a state does not license that state to regulate commerce which occurs outside of its jurisdiction." *Dean Foods*, 187 F.3d at 619-20. Here, Wisconsin jurisprudence on of the state's antitrust laws, which similarly provide a state cause of action in conjunction with a federal statutory scheme, is especially instructive.

To be sure, Wisconsin case law does not unequivocally bar the application of state antitrust law contemporaneously with federal counterparts. But it has imposed limits upon its reach to out-of-state conduct. In the antitrust context, Wisconsin has adopted the "significant" and "adverse effects" standard to "extend the jurisdictional scope of Wisconsin antitrust law to unlawful activity which has significantly and adversely affected trade and economic competition within this state." *Emergency One*, 23 F. Supp. 2d at 972.[8] Thus, in order to fall within the state antitrust statute, the complained-of conduct must have significantly and adversely affected trade or economic competition in the state of Wisconsin. The purposes of the state's antitrust law—to protect and encourage competition in this state, by penalizing interstate activities that adversely affect it—parallel the purposes of the state's trade secrets act—protecting against illegal and/or unfair business practices.

Thus, the Court should determine whether PTP's Complaint has alleged that the accused conduct has had "significant adverse effects" on the citizens of Wisconsin, or any facts upon which such an allegation could be based. The only Wisconsin-specific allegations are that PTP has a member in Wisconsin, presence of Avalara's Green Bay office and the sales of some product into the state, neither of which are sufficient to support an allegation that any misappropriation of trade secrets of an Illinois company by Washington-based Avalara had such effects. Much like in *Emergency One*, PTP has made no allegation of significant adverse effects

---

[8] *Emergency On*e rejected the "significant contacts" test, noting that the nature of antitrust allegations counsels against the use of the "significant contacts" test used in choice of law analysis, as it would "produce a field of regulated interstate activity that is much wider than justified by the legislative intent of the statute or the legitimate goals of the state." 23 F. Supp. 2d at 967-69. It also rejected the "predominance" standard, which would impermissibly create mutually exclusive federal and state actions. *Id*. at 969-70.

on this State. *Id.* at 970-71 (dismissing claim where plaintiff had not alleged, as a result of defendant's conduct, any significant adverse effects on trade and economic competition within Wisconsin).

Against the backdrop of the presumption against the extraterritorial reach of a Wisconsin statute, augmented by the guidance provided in analogous areas of law, PTP's claim falls outside the reach of the Wisconsin Trade Secrets Act. The Complaint does not allege substantial adverse effects on Wisconsin nor does it allege facts that could support such an allegation. It also does not allege facts that would meet the requirements of the DTSA (as it relates to extraterritorial effect) or meet the standard set out in *Applied Materials*, 2008 WL 11398913, at \*6 (alleged conduct caused injurious effects in the state). Thus, under any reasonably applicable test, Count III fails to state a claim upon which this Court can grant relief. It should be dismissed.

**E.      Count IV (Wisconsin Unfair Competition) Should Be Dismissed Because the Wisconsin Statute Does Not Provide a Private Cause of Action.**

PTP's "Count IV" for supposed unfair competition also should be dismissed because it is facially defective. Specifically, Count IV purports to plead a private right of action under Wisconsin Statute Section 100.20, asserting that this "Wisconsin state law provides a private right of action for unfair competition." (*See* Compl. ¶ 73.)

PTP is wholly mistaken that this statute provides a private cause of action in this case. It does not. Wisconsin Statute Section 100.20, specifically provides that *there is no private cause of action* under the section:

> Any person suffering pecuniary loss *because of a violation by any other person of s. 100.70* [relating to environmental, occupational health and safety] *or any order issued under this section* may sue for damages therefor in any court of competent jurisdiction and shall recover twice the amount of such pecuniary loss, together with costs, including a reasonable attorney fee.

Wis. Stat. § 100.20(5) (emphasis added). Section 100.20 provides a private right of action *only* in limited circumstances not present here: (a) when there has been a violation of Section 100.70 for misusing specific titles reserved for persons and/or businesses involved with professions in

health or hazardous materials occupations or (b) when a defendant has violated a government order issued under Section 100.20. Except under these enumerated limited circumstances—facts that PTP has not and cannot plead because they are plainly not present in this case—PTP has no private cause of action under Section 100.20.

The Eastern District of Wisconsin has confirmed the plain reading of the statute. *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2009 WL 3754041, at *10 (N.D. Ill. Nov. 5, 2009) (citing *Emergency One*, 23 F. Supp. 2d at 972 ("There is no private right of action under the Wisconsin Trade Practice Statute, Wis. Stat. § 100.20, except to remedy a violation of an order issued by the [relevant authority]. Plaintiffs have alleged no such violation of any order. Accordingly, defendants' motion to dismiss … is granted.")); *Emergency One*, 23 F. Supp. 2d at 972 (explaining that Section 100.20 precludes a private cause of action and not just double damages when no order prohibiting unfair trade practices had been entered—"[c]hapter 100 betrays no suggestion that such a private right exists, absent a violation of a Departmental order"). Here, as in *Emergency One*, PTP has pleaded no facts to support a violation of a Department order or that a private cause of action otherwise exists under Section 100.20. Accordingly, Count IV fails to state a claim and must be dismissed.

**F.  Count V (Breach of Contract) Is Also Time-Barred.**

PTP's Count V for alleged breach of the August 2011 agreement (Compl., Ex. 2) between PTP and Avalara should similarly be dismissed because PTP fails to allege facts supporting an allegation that the alleged breach occurred within the relevant statute of limitations. Indeed, because no breach could have occurred after August 1, 2014, when the confidentiality obligations expired, and any breach prior to October 22, 2014, is barred under the statute of limitations, there is *no time* when an actionable breach could have occurred.

**1.  California's Four-Year Statute of Limitations Applies to Count V.**

Wisconsin law applies a six-year statute of limitations to most contract actions. *See* Wis. Stat. § 893.43(1) ("[A]n action upon any contract … shall be commenced within 6 years after the

cause of action accrues or be barred").  As discussed below, PTP pled no facts or allegations that the alleged breach occurred within even the six-year Wisconsin statute of limitations.

Here though, the shorter California statute of limitations should apply under the Wisconsin "borrowing statute" that enforces the shorter of the "foreign" statute of limitations and Wisconsin statute of limitations applicable to "foreign causes of action."  *See* Wis. Stat. § 893.07 ("If an action is brought in this state on a foreign cause of action and the foreign period of limitation which applies has expired, no action may be maintained in this state.")  This is a "foreign cause of action" within the meaning of Section 893.07 because both the underlying injury and the final cause of action giving rise to Count V undisputedly occurred outside of Wisconsin.  *See Abraham v. General Casualty Co.*, 217 Wis. 2d 294, 576 N.W.2d 46, 47-48 (1998) (applying Section 893.07 to a contract action and concluding that the action was not a foreign cause of action because "the final significant event giving rise to his suable claim–the alleged breach of contract … –occurred within the state of Wisconsin."); *Paynter v. Proassurance Wisconsin Ins. Co.*, 911 N.W.2d 374, 387-388 (Wis. Ct. App. 2018).  The alleged breach occurred when, according to PTP's allegations, Avalara "used PTP's confidential information for … the development and sale of the Avalara Products."  In other words, the alleged breach occurred outside the state of Wisconsin, given that Avalara's offices and development of the accused Avalara AvaTax, Returns, and TrustFile Products occurred outside Wisconsin.  Further, the 2011 Agreement specifically provides California Law should govern the contract:  "This letter agreement will be governed by and construed in accordance with the laws of the State of California applicable to … without giving effect to principles of conflicts of law." (Compl., Ex. 2 ¶ 9.)  Accordingly, the relevant foreign statute of limitation for contract actions, California's four-year statute of limitations, should govern because it is shorter than Wisconsin's (six years).

Under California law, a cause of action for breach of a written contract is subject to a four-year statute of limitations, and it is time-barred if filed more than four years after the breach.  *See* Cal. Civ. Proc. Code § 337 (West).  The limitations period begins to run at the time of the

breach. *Tin Tin Corp. v. Pac. Rim Park, LLC*, 88 Cal. Rptr. 3d 816, 828, 170 Cal. App. 4th 1220, 1233 (Ct. App. 2009); *Cochran v. Cochran*, 56 Cal. App. 4th 1115, 1120, 66 Cal. Rptr. 2d 337 (1997) ("A cause of action for breach of contract accrues at the time of breach, which then starts the limitations period running.").  Indeed, "the delayed discovery rule generally does not apply to breach of contract actions," unless the breach is "committed in secret" and "the harm flowing from th[e] breach[] will not be reasonably discoverable by plaintiffs until a future time." *MCA Records, Inc. v. Allison*, No. B199801, 2009 WL 1565037, at *11 (Cal. Ct. App. June 5, 2009) (internal citation and quotation omitted); *see also Sanchez  v. Compania Mexicana De Aviacion S.A.*, No. 08-55553, 2010 WL 55518, at *1 (9th Cir. Jan. 5, 2010) (refusing to apply the discovery rule where the contract breach was not in secret and plaintiff "reasonably could have discovered the alleged unlawful conduct before the statute of limitations expired").

### 2. PTP Pleads No Facts Showing that the Supposed Breach of Contract Occurred, Much Less Began, After October 22, 2014.

As discussed above, the Complaint is devoid of any allegations that the alleged breach of contract—incorporating PTP information into the Avalara Products—occurred after October 22, 2014, such that the allegations would not be time-barred.  Even if the statute of limitations was six years, there are no facts or allegations in the Complaint that the alleged breach occurred after October 22, 2012, either.  PTP's allegations fail to state a claim because they provide no facts to support any reasonable inference that the alleged breach occurred before the earliest day permitted under the applicable statute of limitations.

### 3. Any Alleged Use of PTP's Information Is Either Barred by the Statute of Limitations or Does Not Breach of the Letter Agreement.

Just as with the trade secret claims, even if PTP had pled that the alleged misuse of PTP trade secrets began only after October 22, 2014, PTP would still not be able to state a claim upon which relief can be granted.  The Letter Agreement, which is the only contract pled by PTP, specifically provides that the non-use and nondisclosure obligations on Avalara would expire as of August 1, 2014, "three years from the date of this letter agreement."  (Compl., Ex. 2 ¶ 10.) Thus, any use after August 1, 2014, cannot be a breach of the asserted contract.  *See ECT*

*International, Inc. v. Zwerlein*, 228 Wis. 2d at 355. Because the confidentiality obligation expired before the earliest date that is actionable under the relevant statute of limitation, any alleged breach is necessarily either not a breach because there was no confidentiality obligation in place or it is time-barred by the statute of limitations.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court grant its Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), as described above.


DATED: November 7, 2018

s/ *Brandon M. Lewis*

Brandon M. Lewis, Bar No. 1034160
BLewis@perkinscoie.com
**Perkins Coie LLP**
One East Main Street, Suite 201
Madison, WI 53703-5118
Telephone: 608.294.4009
Facsimile: 608.663.7499

Ryan J. McBrayer (*Admission to be filed*)
RMcBrayer@perkinscoie.com
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Telephone: 206.359.8000
Facsimile: 206.359.9000

Daniel T. Keese, (Admission to be filed)
DKeese@perkinscoie.com
**Perkins Coie LLP**
1120 NW Couch Street, Tenth Floor
Portland, OR 97209-4128
Telephone: 503. 727.2000
Facsimile: 503.727.2222

*Attorneys for Defendant*
*Avalara, Inc.*