UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PTP ONECLICK, LLC,

        Plaintiff,

v.                                                                                Case No. 18-C-1671

AVALARA, INC.,

        Defendant.

## DECISION AND ORDER GRANTING MOTION TO TRANSFER VENUE

Plaintiff PTP OneClick, LLC, a Delaware limited liability company with its principal place of business in Buffalo Grove, Illinois, filed this action on October 22, 2018, against Avalara, Inc., a Washington corporation with its principal place of business in Seattle, Washington, alleging patent infringement, misappropriation of trade secrets under both federal and Wisconsin law, unfair competition under Wisconsin law related to tax software, as well as breach of contract for violating the terms of a confidentiality agreement. In lieu of an answer, Avalara filed the two motions that are presently before the court: a motion to dismiss PTP OneClick's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and a motion to transfer the case to the Western District of Washington pursuant to 28 U.S.C. § 1404(a). The court has jurisdiction over the patent infringement claims under 28 U.S.C. §§ 1331 and 1338(a) and the federal trade secret misappropriation claim under 18 U.S.C. § 1836(c), as well as supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367. The court also has jurisdiction under 28 U.S.C. § 1332. For the following reasons, Avalara's motion to transfer will be granted, and the court will reserve resolution of the motion to dismiss for the transferee court.

**BACKGROUND**

In 2006, Pavlos Pavlou founded the company that is now called PTP OneClick, LLC, two of whose members reside in Wisconsin. Pavlou, a certified public accountant and tax professional, developed software that automatically calculates various corporate taxes at the state, county, and municipal level based on location and type of sale, and automatically generates and files the relevant tax documents. In February of 2006, Pavlou filed for patent protection for his invention, which the Patent and Trademark Office granted in 2017 when it issued U.S. Patent No. 9,760,915. PTP OneClick owns and markets Pavlou's tax solution, known as Pavlou SalesTaxPRO.

In 2011, Avalara expressed interest in PTP OneClick's tax solution. Avalara, whose headquarters are located in Seattle, Washington, sells tax calculation and preparation products and, according to the complaint, Avalara's tax products did not have the same functionality as PTP OneClick's at this time. The parties arranged to meet at Avalara's Washington office on August 2, 2011. Prior to this meeting, the parties executed a confidentiality agreement that, among other things, required Avalara to keep confidential any details disclosed during both the meeting and any subsequent discussion regarding a potential transaction.

At the meeting, Pavlou met with Avalara senior executives and demonstrated the functionality of his product. Impressed with the product, Avalara brought in more employees, either in person or remotely, to view further demonstrations of the product and ask questions. Pavlou explained his methodology utilizing a white board and Avalara employees continued to ask questions and took notes. Following the conclusion of the meeting, Avalara executives requested an unlocked fully functional version of Pavlou SalesTaxPRO, which Pavlou provided the next day. There were further negotiations and exchanges of information between the parties until April of

2

2012 when Avalara informed PTP OneClick that it was no longer interested in a business deal.

PTP OneClick alleges that after the 2011 meeting, Avalara released a series of updates to some of its tax products—AvaTax, Avalara Returns, and Avalara TrustFile—that introduced capabilities that Avalara's tax products previously did not possess that were identical or near identical to the capabilities of Pavlou SalesTaxPRO. The majority of the Avalara employees who are responsible for the development, design, and commercialization of these products work at Avalara's Seattle headquarters where the meeting took place.

In 2014, Avalara opened an office in Green Bay after its acquisition of the Zytax line of energy excise tax-related products. The focus of the work that is done in Avalara's Green Bay office is focused on this energy excise tax-product.

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Transfer is proper when "(1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interests of justice." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986). "[T]he party seeking a Section 1404(a) transfer bears the burden of showing that 'the transferee forum is clearly more convenient' than the transferor forum." *Vandeveld v. Christoph*, 877 F.Supp. 1160, 1167 (N.D. Ill. 1995) (quoting *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1290 (7th Cir. 1989)). A ruling on a motion to transfer venue "requires an 'individualized, case-by-case consideration of convenience and fairness,'" and "the district court

3

is afforded broad discretion and substantial deference in weighing the factors for and against transfer." *Bull v. Ill. Union Ins. Co.*, No. 16 C 11446, 2017 WL 3234374, at *2 (N.D. Ill. July 31, 2017) (quoting *Coffey*, 796 F.2d at 219).

## ANALYSIS

Transfer pursuant to § 1404(a) is appropriate only when the transferee forum is one where the action "might have been brought." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Here, the parties are in agreement that venue is also appropriate in the Western District of Washington.

### A. Convenience of Parties and Witnesses

In assessing the convenience of the parties, a court considers four factors: (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; and (4) the convenience of the parties and witnesses. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010); *Rosen v. Spirit Airlines, Inc.*, 152 F. Supp. 3d 1055, 1059 (N.D. Ill. June 17, 2015). "[T]ransfer is inappropriate if it will 'merely transform an inconvenience for one party into an inconvenience for another party.'" *Vandeveld*, 877 F. Supp. at 1167 (quoting *Sage Prods., Inc. v. Devon Indus., Inc.*, 148 F.R.D. 213, 216 (N.D. Ill. 1993)).

#### 1. Plaintiff's Choice of Forum

While deference to a plaintiff's choice of forum is generally given, *Coffey*, 796 at 219–20, that choice is entitled to less deference by the court when a plaintiff's choice of forum is not the plaintiff's home forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981). "When the plaintiff has chosen a forum other than its own home, the assumption that the forum chosen by the plaintiff is more convenient is '"much less reasonable."'" *Century Consultants, Inc. v. Choctaw*

*Racing Servs., LLC*, No. 05-C-0494, 2005 WL 2671248, at *2 (E.D. Wis. Oct. 18, 2005) (quoting *Piper Aircraft Co.*, 454 U.S. at 255–56). As the Eastern District of Wisconsin is not PTP OneClick's home, its choice of forum is given less weight. Although PTP OneClick has two members in Wisconsin, it is not clear that they even reside within the Eastern District of Wisconsin. And while Avalara has a presence in this judicial district, that office, which was not a part of Avalara until three years after the Seattle meeting, is focused on a different product that is not at issue in this case. In patent infringement actions, "the combination of multiple parties being headquartered in or near the transferee venue and no party or witness in the plaintiff[']s chosen forum is an important consideration." *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010), as amended (Jan. 13, 2011) (collecting cases); *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed Cir. 2009) ("While the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue, if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." (citations omitted)). Consequently, PTP OneClick's choice of forum is given less deference.

### 2. Situs of the Material Events

Because the Western District of Washington is where the events at the heart of this controversy transpired, this factor weighs in favor of transfer. The 2011 meeting at which Pavlou demonstrated how his tax system operated and shared the information with Avalara that is subject to the parties' confidentiality agreement took place in Seattle, Washington. Avalara's Seattle office is where the tax products at issue—AvaTax, Avalara Returns, and Avalara TrustFile—were designed, developed, and commercialized.

5

In patent infringement suits, the location where an allegedly infringing product is developed and commercialized is considered in determining the situs of material events. *In re Acer Am. Corp.*, 626 F.3d at 1256 ("While the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue, if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor."); *Ord Structure Innovations, LLC v. Oracle Corp.*, No. 11-C-3307, 2011 WL 4435667, at *2 (N.D. Ill. Sept. 22, 2011) ("In a patent case, the situs of material events is the place where the alleged infringer develops, manufactures, and sells the accused product because that is the place that gives rise to its potential liability.") As Seattle, Washington, is where Avalara developed the allegedly infringing tax products, and is where the majority of the relevant events took place, this factor weighs in favor of transfer.

### 3. The Relative Ease of Access to Sources of Proof

Although Avalara's corporate headquarters are located in Seattle, there is a trend towards affording decreasing weight to the location of records and evidence in light of technological developments. *See Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000); *Kimberly-Clark Worldwide, Inc.*, 2014 WL 6612881, at *3. Still, most of the evidence in Avalara's possession, which would include the records relating to its development and commercialization of the allegedly infringing product, is located in Seattle. As the plaintiff in a patent infringement action, PTP OneClick's records are less likely significant to the resolution of the case. This factor therefore also favors Avalara.

### 4. Convenience of the Parties and Witnesses

The convenience of witnesses is often considered the most important consideration in determining whether to transfer a case. *Commissioning Agents, Inc. v. Long*, 187 F. Supp. 3d 980, 987 (S.D. Ind. 2016). There are two categories of witnesses to consider: party and non-party witnesses. Regarding party witnesses, although Avalara has identified a number of current employees it intends to call at witnesses, "[t]he convenience of employee witnesses is less important in a transfer analysis since party witnesses normally must appear voluntarily." *Aon PLC v. Heffernan*, No. 16-cv-01924, 2017 WL 478270, at *4 (N.D. Ill. Feb. 6, 2017). Less important, however, does not mean irrelevant. Here, transferring the case would be significantly more convenient for Avalara's seven current employees that would potentially testify at trial. And while the benefit afforded to Avalara by transfer would increase the burden to Pavlou as he would have to travel farther, he was already burdened as he already had to travel over 150 miles to any trial that would take place in the Eastern District of Wisconsin. Further, contrary to PTP OneClick's assertion, aside from trial, it is unlikely that transferring the case would require Pavlou to travel to Seattle to attend hearing and settlement conferences given the ability to perform these tasks telephonically.

Regarding non-party witnesses, although both Avalara and PTP OneClick identify non-party witnesses they intend to call, none of them are subject to this court's subpoena powers to compel attendance at trial as they are all more than 100 miles away from this court. Fed. R. Civ. P. 45(c)(1)(A) (A subpoena may command a person to attend a trial "within 100 miles of where the person resides, is employed, or regularly transacts business in person."). Two of Avalara's non-party witnesses, however, would be subject to the subpoena power of the court in the Western

District of Washington. Both Rory Rawlings, Avalara's former Co-Founder and Chief Tax Automation Officer, and Dave Weber, Avalara's former Senior Vice President of Product Management, reside within the subpoena power of the transferee court, were present at the 2011 meeting, and were named in PTP OneClick's complaint. Although this may inconvenience certain non-party witnesses, there is no guarantee that they would even attend trial were it to be more conveniently located, and depositions can be used to take their testimony in convenient locations. Accordingly, this weighs in favor of transfer.

**B.     Interest of Justice**

"'A decision to transfer under Section 1404(a) relies heavily on consideration of the interest of justice, which 'may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result.'" *Rosen* , 152 F. Supp. 3d at 1062 (quoting *Coffey*, 796 F.2d at 220). The interest of justice "relates to the efficient administration of the court system" and the "courts look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums, each court's relative familiarity with the relevant law, the respective desirability of resolving controversies in each locale, and the relationship of each community to the controversy." *Research Automation, Inc.*, 626 F.3d at 978 (citations omitted).

Although the Western District of Washington has a higher civil caseload compared to the Eastern District of Wisconsin, 443 cases compared to 391, the time to trial in Washington for civil matters is significantly faster than in Wisconsin, 19.5 months compared to 35.6 months, which may be attributable to the fact that the Western District of Washington has ten senior judges, where the

Eastern District of Wisconsin has none.[1]  "[T]he relative speed with which an action may be resolved is an important consideration when selecting a venue." *Trafficcast, Inc. v. Pritchard*, No. 05-C-557-S, 2005 WL 3002267, at *3 (W.D. Wis. Nov. 7, 2005) (citing *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963)).  Here, transfer would "serve the interest of the parties in having a prompt resolution of the matter." *Red Stag Eng'g & Automation, Inc. v. Elite Mfg. Techs., Inc.*, No. 07-C-224, 2007 WL 1413402, at *4 (E.D. Wis. May 11, 2007).

Regarding each court's familiarity with the relevant law, both courts are equally suited to address the federal law claims for patent infringement and violation of federal trade secret law. Regarding PTP OneClick's breach-of-contract claim, the confidentiality agreement between the parties makes clear that it is governed by California law: "This letter agreement will be governed by and construed in accordance with the laws of the State of California applicable to contracts between residents of that State and executed in and to be performed in that State, without giving effect to principles of conflicts of law."  Dkt No. 1-2 at 4.

While the two remaining claims involve alleged misappropriation of trade secrets and unfair competition in violation of Wisconsin law, it is likely that the unfair competition claim will be dismissed. *See Emergency One, Inc. v. Waterous Co., Inc.*, 23 F. Supp. 2d 959, 972 (E.D. Wis. 1998) (holding that no private action exists for unfair competition under Wis. Stat. § 100.20 absent a violation of an order entered by the Wisconsin Department of Agriculture, Trade and Consumer Protection).  As for the claim for misappropriation of trade secrets, the Wisconsin statute, Wis. Stat. § 134.90, has no extraterritorial effect and it appears most, if not all, of the alleged misappropriation

---

[1] Statistics taken from FEDERAL COURT MANAGEMENT STATISTICS, http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2018/06/30-3 (last visited 4/30/2019).

occurred in other states. As a result, it appears the claim is intended more as a vehicle for avoiding a change of venue than a substantive claim for relief.

The two remaining factors—the desirability of resolving controversies in each locale and the relationship of each community to the controversy—weigh in favor of transfer to the Western District of Washington. Wisconsin's ties to this case are insubstantial as neither party is a Wisconsin corporation and each only has a limited connection with Wisconsin. On the other hand Washington has considerable ties to this case as it was the location for the majority of the events that transpired and Avelara is a Washington-based corporation with over 464 employees located in the Western District of Washington. Consequently, the interests of justice weigh in favor of transfer to the Western District of Washington.

**C.     Motion to Dismiss**

Because the court finds that transfer to the Western District of Washington is appropriate in this case, the court will not address Avalara's motion to dismiss, the resolution of which is reserved for the transferee court.

**CONCLUSION**

For the foregoing reasons, Avalara's motion to transfer (Dkt No. 5) is **GRANTED**. The Clerk is directed to transfer the case to the United States District Court for the Western District of Washington.

**SO ORDERED** this  30th  day of April, 2019.

> s/ William C. Griesbach
> William C. Griesbach, Chief Judge
> United States District Court